53 So.2d 114 (1951)
LEE et ux.
v.
SAS et al.
No. 21857.
Supreme Court of Florida, Special Division A.
June 15, 1951.
John H. Carter, Jr., Marianna, for appellants.
Marion B. Knight, Blountstown, for appellees.
TERRELL, Justice.
In July, 1949, A.W. Lee and his wife Juanita, hereinafter referred to as the Lees, sold to Bert Sas as trustee for himself and J.C. Van Es and C.W. Van Den Bosch, hereinafter referred to as the Dutchmen, 2000 acres of farm land with *115 houses and other farm equipment, including livestock. The transaction was consummated by warranty deed and purchase money mortgage on the property bearing interest at 6 per cent per annum. No down payment was made and deferred payments were on easy terms.
Immediately following the purchase the Dutchmen employed E.A. Branton as overseer and placed him in charge of the farm. In October 1948 the Lees instituted this suit in equity to foreclose the purchase money mortgage. A receiver was appointed to take charge of the property. Branton and the Dutchmen were made defendants. In December 1948, the Dutchmen reconveyed the property to the Lees who canceled the mortgage of record, the receiver was discharged and the expenses of the receivership were charged to the Lees.
At this point the Dutchmen appear to have dropped out of the lawsuit. The court on March 22, 1949, entered an order striking all the pleadings subsequent to the bill of complaint, required Branton and the Lees to file new pleas and state the issues between them. Branton filed a motion to strike the bill, he also filed an answer and a cross-complaint. The Lees filed an answer to the cross-complaint and an amended counterclaim. No order was made on the motion to strike the bill so Branton's claim is based upon his answer and cross-complaint. In his answer he says he was employed to operate the farm by the "record title owners at the time of such said operation and employment and was therefore accountable only to such record title owners and not to the plaintiffs herein." The record title owners were the Dutchmen.
By his cross-complaint Branton claimed a statuory lien against the farm and other property for labor and materials as follows: Repairs to farm machinery $510.35, paid for labor on farm $710.50, hay purchased for farm $397.50, 60 acres of corn furnished to farm $3000, 15 acres of cane furnished to farm $1000, personal labor on farm $900, for use of pickup truck on farm $244.30, for hogs belonging to Branton fattened on farm $2000. Total $8,762.65.
By their answer to the cross-complaint, the Lees deny the existence of a statutory lien in favor of Branton or any liability to him for the items claimed in the preceding paragraph. They aver to the contrary that, (1) Branton owes them $986.70 for 20 hogs taken from the farm and sold, (2) that Branton owes them for a mortgage given by him to C.J. Bailey to secure livestock for $500 and which they bought for $250, (3) that Branton owes them $1500 for feed he gave 32 hogs he placed on the Lee farm and fattened, (4) that Branton should be required to pay them $1000 for cost of the receivership which was required because of his mismanagement.
Such were the issues on which the case went to trial and on which the court found and decreed that Branton was entitled to lien against the Lees for $9,354.40 as follows: Proceeds for sale of Branton's hogs, $3,836.40; corn furnished to Lee farm, $3000; money expended for repairing farm machinery, $510.35; money expended for labor on farm, $710.50; money expended for hay on farm, $397.50; labor as supervisor on farm, $900. Total $9,354.40, against which the following amounts were allowed as set-offs: Bailey mortgage, $350; food and care of Branton's hogs, $1500; proceeds of Lee hogs sold by Branton, $986.70; farm income retained by Branton, $230.75; making a total of $3,067.45. Branton was also decreed to take $3,836.40 in the registry of the court which was received from the sale of property described as the Branton hogs. Balancing the claims of the parties left $2,450.50 due Branton for which a judgment was entered against the Lees in favor of Branton and execution was directed against them, their goods and chattels and their bondsmen.
At the outset it conclusively appears that Branton's contract to supervise the farm was made with the Dutchmen; the Lees had no part in it; they were not privies to it and so far as the record discloses, knew nothing about its terms or the origin of the items on which the judgment lien was fastened. Some of the transactions such as placing Branton's hogs on the Lee farm to be fed, carrying 155 head of hogs from the Lee farm to his (Branton's) *116 mother's place eight miles away to be fed, taking a number of hogs from the farm and selling them at the Farmers Market for $986.70, mingling his own hogs with the hogs on the Lee farm and perhaps other items that might be listed in this category, we find no warrant for whatever and there is no showing that the Lees gave their consent to or had knowledge of these things when they were done. Not only that, we find no basis whatever in the record for some of these transactions.
The contract between Branton and the Dutchmen and the management of the farm under it was so unsystematic and unbusinesslike that it is difficult for us to arrive at just what was contemplated by them, and the evidence gives us very little help on the point. If the Lees are to have a lien fastened on them they should have been a party to the contract or they should have had knowledge of each transaction in which it is attempted to bind them, brought to their attention at the appropriate time. In their brief appellees admit that they rely on Sections 85.04, 84.11, 84.12, 84.02 and other provisions of Chapters 84 and 85, F.S.A., to support their lien. These sections certainly contemplate some kind of a contract with the Lees if they are to be bound but we find no such contract. As to most of the items on which the lien and judgment are fastened, the evidence does not show that the Lees were aware of them. A labor or materialman's lien must be grounded on express or implied contract. It can't be fastened on one like you would buckle a collar on a bird dog or paste a tag on an express package that is being forwarded to a friend.
We have examined the evidence supporting the charge of $3000 for corn furnished the Lee farm, $510.35 for repair of machinery, $397.50 expended for hay and some other items, but we find nothing to support a judgment against the Lees for these amounts. The evidence is equally as unsatisfactory to support the claim of $900 for service as supervisor of the farm. As to the $3,836.40 representing sale of Branton's hogs, this was a sale by order of court and Branton was entitled to that less cost of feeding, but there was no basis for a judgment against the lands of the Lees for it. As to the $3000 for corn furnished the Lee farm, we do not find evidence of this much value in the corn. If the Lees are to be charged with these items and have judgment against them to pay for them, their value must be proven and it must be shown that the Lees authorized them or had knowledge of them, was in privity to them or approved them in some manner.
We are also of the view that the trial court committed error in overruling the petition of the plaintiffs filed October 24, 1949 to amend the bill of complaint. This amendment had to do with reconveyance of the land to the Lees, the knowledge of the Lees of Branton's claim and whether or not the purchase-money mortgage was still in effect and had priority over Branton's claim.
For the reasons so stated, the judgment appealed from must be and is hereby reversed.
Reversed.
SEBRING, C.J., and THOMAS and BARNS, JJ., concur.