117 So.2d 240 (1959)
James H. BRODERICK and Anna L. Broderick, His Wife, Appellants,
v.
OVERHEAD DOOR COMPANY OF FORT LAUDERDALE, INC., James Moorhead, Builder, et al., Giffen Industries, Inc., Appellees.
No. 1010.
District Court of Appeal of Florida. Second District.
December 30, 1959.
*242 Dale, Scott & Stevens, Fort Lauderdale, for appellants.
Koppen & Watkins, Miami, for appellee, Overhead Door Company of Fort Lauderdale, Inc.; Walter Crane and Cecil T. Farrington, Fort Lauderdale, for appellee, James Moorhead, Builder; and Waldo G. Rothenberg, South Miami, for appellee, Giffen Industries, Inc.
KANNER, Judge.
The owners of the property here involved, Broderick and wife, are appealing from the final decree of the chancellor wherein were awarded sums of money to the general contractor-builder and to certain subcontractors under mechanics' liens.
The contract, under which the builder, Moorhead, agreed to erect for the owners a warehouse involving in part the remodeling and enlargement of a building already upon the owners' property, called for payment to the builder of $23,900, with ten per cent to be withheld for final payment. The contract provided that the entire sum be placed in escrow and disbursed to the builder in progress payments as requisitions were provided by him through the presentation of "paid" bills, and that there would be no alterations of, no additions to, no deviations nor omissions from the specifications save upon the owners' written authorization.
Construction was completed by November 25, 1955. During the course of construction, plans by the owners to use the building as a warehouse were changed by them; and the structure actually was erected for use as an automobile paint shop. The entire escrow sum of $23,900 was paid to the builder prior to the filing of any claim of lien, although the builder furnished no statement under oath as to unpaid lienors until later.
The first claim of lien against the owners was filed on January 20, 1956, by Giffen Industries, Inc., a roofing company hereinafter referred to as "Giffen", in the amount of $3,478. Giffen then filed on April 12, 1956, a complaint to foreclose this lien, naming both the owners and the builder as defendants. The owners by their answer counterclaimed with respect to certain alleged rain damage. The builder answered the complaint and also answered the owners' counterclaim, cross-claiming for extra work which he alleged was performed at the behest of the owners.
Claim of lien was filed by Overhead Door Company of Fort Lauderdale, Inc., hereinafter referred to as "Overhead Door," within three months of the time that company had furnished labor and materials. Action being brought also on this claim, the court granted motion of the builder to consolidate the cases. A decree pro confesso was later entered against another lien claimant, John L. Schnorr, Jr., who had been brought in and joined as a party defendant through the consolidation order.
After hearing, the chancellor, on November 20, 1958, entered his final decree awarding Giffen a lien for the full amount claimed, $3,478 plus interest and costs, and denying the owners their counterclaim. Also Overhead Door was granted the full amount of its claim, $877.56 plus interest and costs; and the builder was awarded a total of $3,706.61 for extras claimed by him plus interest and costs. The sum of $401.61 due the subcontractor, Schnorr, from the builder was permitted by the court to be paid directly by the owners as reduction of their indebtedness to the builder.
In analyzing this case and applying the pertinent provisions of the mechanics' lien law to the facts as they have emerged from the record, we first must determine the actual contract price. Section *243 84.01, Florida Statutes, F.S.A., defines the term, "contract price", as the amount agreed upon by the contracting parties for the performance of all labor and services and the furnishing of all materials covered by the contract, this amount to be increased by the price of any "extras" and to be diminished by any allowances made because of altered specifications or defects in workmanship or materials or by other breaches of the contract. The contract we are here considering specified that any extras must have been authorized in writing by the owners. This we recognize as valid. Howard v. Pensacola & A.R. Co., 1889, 24 Fla. 560, 5 So. 356. We also recognize, however, that such a provision may be waived; and a waiver of the provision may be established by the subsequent course of dealing between the parties. Charlotte Harbor & N. Ry. Co. v. Burwell, 1908, 56 Fla. 217, 48 So. 213. Ordinarily, a written agreement cannot be abrogated nor modified by executory or parol agreement; but if the parol agreement has been accepted and acted upon by the parties, this rule does not apply. Tussing v. Smith, 1936, 125 Fla. 578, 171 So. 238. "Extras", by statutory definition, consist of labor or services performed or materials furnished for the improvement of real property authorized by the owner in addition to labor, services, or materials covered by a previous contract between the same parties. Section 84.01, Florida Statutes, F.S.A. In the case here considered, the testimony, supported in part by the exhibits, amply establishes that during construction of the building there were many changes in the plans authorized by the owners for extras incorporated in the construction, although these authorizations were not made in writing by the owners.
The basic contract price being $23,900, it follows that in order to arrive at the actual contract price, this figure must be increased by the price of the extras. To achieve this result, this court must study severally the items of extras enumerated by the chancellor in his order of September 15, 1958, for the purpose of ascertaining whether each is sustainable, since these do not individually appear in his final decree.
Prefatory to such an analysis, we call attention to a twenty per cent increment allowed by the chancellor under the builder's claim as payable in connection with certain items classified as extras. The builder's claim with regard to the respective twenty per cent additions is that it should be paid on these several items for "overhead and profit." It may be said at the outset that such twenty per cent charge is not sustainable unless the record shows that it constituted a reasonable rate at which the contractor might be reimbursed for his labor and services.
The provisions of neither section 84.01, defining extras as labor or services performed or materials furnished, nor those of section 84.02, Florida Statutes, F.S.A., providing for liens for these items, apply to overhead and profits. Overhead and profits, as separate items, are not within the purview of the Mechanics' Lien Law. Surf Properties v. Markowitz Bros., Fla. 1954, 75 So.2d 298. When parties enter into an agreement for construction work and during the progress of the construction changes are requested and made in the form of extras, then the law implies an obligation to pay the reasonable cost thereof in addition to the stipulated sum named in the original agreement. Therefore, the price of extras should be computed at reasonable rates. DeLotto v. Fennell, Fla. 1952, 56 So.2d 518. Where not otherwise agreed upon, a plaintiff should submit proof as to the reasonable value of labor and services, including supervision, and materials actually furnished a defendant. Golub v. De Linardy Flooring Co., Fla. 1950, 44 So.2d 75.
Certain of the items allowed by the court are sustainable, or partially so, as hereinafter delineated. One of these was the builder's claim for electrical work; and the sustainable portion of the $900 granted by the court was $836 for extra work, the original estimate having been $247 and the *244 final bill, including charge for extras, having been $1,083, leaving the named difference of $836. Also, $200 of the $240 granted by the court under the builder's claim for door openings as an extra is allowable for that item, the twenty per cent commission not being sustained. Similarly, with the twenty per cent claim deleted, unless it can be said that the twenty per cent constituted a reasonable rate of reimbursement, as above defined, the following items are allowable: $170 instead of $204 for removal of certain tree stumps, $50 instead of $60 for traffic top to a septic tank, $96 instead of $115.20 for application of plaster to certain walls of the old portion of the building, and $676 instead of $811.85 for "concrete job and labor" done on floors of the old section of the building. Additionally, the $241.93 allowed by the court for "welding and erection" appears to have been a legitimate extra; and the fact that a decree pro confesso had been taken against Schnorr, who performed these services, and that Schnorr failed to perfect a lien has nothing to do with the owners' liability to the contractor for the extra welding.
Certain other items allowed by the court are not here sustainable. These include the $36, embracing the twenty per cent overhead and profit charge, which the contractor claims because of use by the owners for their own purposes of some of the builder's scaffold planks. Since it does not appear that the use here designated was for the construction work involved in this case, classification of this item as an extra is incorrect, although the item might constitute an element of damage not secured by a lien. There was also an allowance of $507.60 for "fill, leveling sidewalks." Broken down, a portion of this item might constitute an extra under the record; but the total figure is doubtful, since it includes charge for the delay of seven trucks for two and a half hours at ten dollars per hour, twenty yards of fill dirt, the labor involved, and the twenty per cent additional charge by the contractor. In the present state of the record, a break down of the various items included does not appear possible; and further explanation is necessary. Additionally, an award of $540, based upon the builder's claim for truck delay because of old cars and junk said to have been so located on the site as to impede construction, included the expense, delay of a crane, and a twenty per cent charge by the builder, although it is not clear whether extra labor involved was included. There should be a break down and clarification of this item to show whether there is an allowable extra or whether an allowance may be made as an element of damage. Similarly, although the $50 award for work done for the owners privately by a carpenter in the employ of the builder on time being paid for by the builder may not be classified as an extra, it might well constitute an element of damage.
There was in addition the award by the court to Overhead Door of $877.56 on its claim of lien, the amount of the final bill, the original bid having been $313.12. The difference between these two sums leaves $564.44 as the extra amount granted Overhead Door. That this extra amount was not allowed to the builder as an extra, nor any part of it, is entirely consonant with the provisions of section 84.06, Florida Statutes, F.S.A., concerning labor, services, or materials as being covered by liens of more than one class.
The owners argue insufficiency of notice, since it was almost a year following final payment to the contractor before his claim of lien was filed. However, since the builder was in direct privity with the owners by virtue of his contract, his lien, if any, attached at the time of the visible commencement of operations; therefore, notice could have served no useful purpose and was not required, the owners having knowledge of the contract and thus having already become charged with notice. Maule Industries v. Trugman, Fla. 1952, 59 So.2d 27; and Hendry Lumber Co. v. Bryant, 1939, 138 Fla. 485, 189 So. 710. Although *245 the builder did not file his claim of lien nor enter his cross-claim until November 9, 1956, this date does fall within the prescriptive year's time following completion of the work; and, also, he had previously been made a defendant in the cause. See section 84.21, Florida Statutes, F.S.A. The other lien claimants filed their claims within the statutory three months of the time they furnished labor and materials. Sections 84.04(4) and 84.16, Florida Statutes, F.S.A.
In summary as to this phase of the case, the extra items shown by the record as valid, and which were necessarily included within the sums allowed, are listed below:

Electrical work $836.00
Door openings 200.00
Removing tree stumps 170.00
Traffic top 50.00
Plaster 96.00
Concrete job and labor 676.00
Welding and erection 241.93
Overhead doors 564.44
 ________
The total of these items is $2834.37

As has been pointed out, the original contract amount of $23,900 had been paid by the owners to the builder by the time the suit was instituted, and no extra amounts had been paid. This amount incremented by the total of allowable extras listed above yields the sum of $26,734.37 as the actual contract price pursuant to the provisions of section 84.01, Florida Statutes, F.S.A., insofar as it may be sustained through the record. This computation of the actual contract price neither appears in the record nor in the chancellor's order. The sum must therefore be computed, since the contractor claims a larger amount, the owners assert that only the exact amount shown in the written contract is allowable, and the court's award of extras is in part erroneous.
The aggregate amount of all liens allowed for performing labor or services or furnishing materials covered by a direct contract shall not exceed the amount of the contract price fixed by the direct contract as diminished by the amount of any money "properly paid" by the owner under such contract. Section 84.02, Florida Statutes, F.S.A. The final payment specified by the contract to be withheld amounts to ten per cent of the contract price as shown by the written instrument, or $2,390. The owners concede that, since this ten per cent was paid to the contractor by them without their requiring the contractor's affidavit as to unpaid lienors pursuant to requirements of section 84.04(3), Florida Statutes, F.S.A., this sum was improperly disbursed. Thus it is that a final payment under a building contract made by the owner to the general contractor without first obtaining from the contractor a sworn statement as to unpaid lienors pursuant to the requirements of the statute, section 84.04(3), is not properly made; and the owner becomes responsible to the general contractor's unpaid subcontractors and materialmen to the amount of such final payment. Renuart Lumber Yards, Inc. v. Stearn, Fla. 1957, 95 So.2d 517; and Curtis v. McCardel, Fla. 1953, 63 So.2d 60.
Both Overhead Door and Giffen were subcontractors and materialmen and as such held liens of a class superior to that of the builder, Moorhead. Section 84.06 (3), Florida Statutes, F.S.A. It is clear that there was available to pay these two lien claimants at least the sum of $2,834.37, the total of the sustainable extras, plus $2,390, the amount improperly paid, or an aggregate of $5,224.37. The total of the $3,478 award to Giffen and that of $877.56 to Overhead Door is $4,355.56, a sum adequately embraced by the $5,224.37 allowed under section 84.02 of the mechanics' lien law.
When the awards to Giffen and to Overhead Door, totaling $4,355.56, are added to the named contract price of $23,900, the result is $23,900 plus $4,355.56, or an aggregate of $28,255.56. This represents the sum paid and to be paid by the owners under the lower court's decree insofar as it is sustainable. Although this sum exceeds *246 the contract price of $26,734.37, inclusive of allowable extras as they have been computed, it is consonant with section 84.02, Florida Statutes, F.S.A., since $2,390 concededly was paid improperly. However, such improper payment did not result in any detriment to the builder; and money paid by the owner on a direct contract, if such payment is clearly proved to have caused no detriment to any certain lienor, shall be held, as to such lienor, to have been properly paid. Section 84.05(13), Florida Statutes, F.S.A. Thus the contractor can gain no advantage over these lienors from the amount improperly paid to him.
Therefore, it follows that there is left no money available for a lien on behalf of the contractor under provisions of section 84.02, Florida Statutes, F.S.A., concerning aggregate amounts allowed for all liens, since he can take no advantage of the amount paid to him improperly and is limited to the actual contract price inclusive of extras, aggregating $26,734.37. The claims of the other two lienors are superior to that of the builder under section 84.06, Florida Statutes, F.S.A., and the award to the contractor cannot be sustained under the present record.
The owners, denying privity with Overhead Door, insist that the company therefore may not collect extras against them. The record does show privity as regards two of the doors installed by Overhead Door but not as to the others. However, a materialman's lien may result either directly through privity of contract with the owner or derivatively from a contract between the materialman and the builder, since materialmen and laborers may be protected by mechanics' liens upon land improved or affected by their material and labor without regard to the technical and ancient concepts of privity of contract. Foley Lumber Co. v. Koester, Fla. 1952, 61 So.2d 634; and Greenblatt v. Goldin, Fla. 1957, 94 So.2d 355. Therefore, it makes no difference whether the extras were furnished through direct contract with the owners or through the contract with the builder, since privity with the owner is not required for a materialman to perfect his lien under the mechanics' lien law.
Some items claimed by the builder are not sustainable here under the present state of the record, requiring further proof and clarification for their valid classification as extras. Uncontradicted testimony indicates still other amounts which the court might have found as due, particularly with reference to extra work on a spray booth to the extent of $65. It is possible that the contractor might prove extras in an amount sufficient to increase the contract price to the point that he could acquire a right to an award and to a lien. Additionally, there is evidence of items which could be classified as elements of damage, even though they may not be classed as extras. If the contractor succeeds in proving his right to a lien in some amount, then the equity court could enter a decree for damages for the other items not properly classified upon proof as extras. Section 84.29, Florida Statutes, F.S.A.; and Shad v. Arnow, 1944, 155 Fla. 164, 19 So.2d 612.
The chancellor's decree is affirmed as to the two lien claimants, Giffen and Overhead Door, and reversed as to the general contractor, Moorhead, with instructions for further proceedings consistent with the views here expressed.
Affirmed in part and reversed in part.
ALLEN, C.J., and GERALD, LYNN, A.J., concur.