**The Trustees of the Colorado Carpenters & Millwrights Health Benefit Trust Fund, Colorado Centennial State Carpenters Pension Trust Fund, Colorado Carpenters Vacation Trust Fund and Colorado Carpenters Statewide Joint Apprenticeship, Education & Training Trust Fund v. Pinkard Construction Co., The Travelers Indemnity Company, and Board of Education, Boulder Valley School District No. RE-2**

## No. C-1497

**Sheet Metal Workers International Association, Local No. 9 v. Century Contractors, Inc., a Colorado corporation, and The Travelers Indemnity Company, a Connecticut corporation, jointly and severally**

(604 P.2d 683)

Decided December 24, 1979.                    Rehearing denied January 21, 1980.

36

Gorsuch, Kirgis, Campbell, Walker and Grover, David M. Powell, for plaintiffs-appellants, The Trustees of the Colorado Carpenters & Millwrights Health Benefit Trust Fund, et al.

Meer, Wolf & Slatkin, Albert B. Wolf, for Pinkard Construction Co., et al.

Brauer & Simons, P.C., Walter C. Brauer III, for plaintiff-appellant, Sheet Metal Workers International Association, Local No. 9.

Edward L. Volpe, for defendants-appellees, Century Contractors, Inc., a Colorado corporation, and The Travelers Indemnity Company, a Connecticut corporation, jointly and severally.

*En Banc.*

CHIEF JUSTICE HODGES delivered the opinion of the Court.

This review on certiorari involves the consolidation of two cases wherein the petitioners were each denied the right[1] to seek recovery of unpaid fringe benefits which were to be paid into express trusts, created pursuant to the Labor Management Relations Act of 1947, 29 U.S.C. §§141 *et seq.* (1976). Several subcontractors to the respondents Pinkard Construction Co. (Pinkard) and Century Contractors, Inc. (Century),[2] had entered into collective bargaining agreements involving compensation to employees for work done on certain public works projects. The bargaining agreements in each case provide for payment of these fringe benefits to the respective trust funds. One trial court granted summary judgment against the Trustees of the Colorado Carpenters and Millwrights Health Benefit Trust Fund, et al., (Carpenters Funds), and the other trial court granted judgment on the pleadings against the Sheet Metal Workers International Association, Local No. 9 (Sheet Metal Workers). Both trial courts relied upon *Ridge Erection Co. v. Mountain States Tel. & Tel. Co.,* 37 Colo. App. 477, 549 P.2d 408 (1976), which held that under the Mechanics' Lien Law, (Sections 38-22-101 *et seq.,* C.R.S. 1973), unpaid fringe benefit contributions are not part of the value of "labor done" for which a mechanics' lien may be claimed.

The Colorado Court of Appeals affirmed the summary judgment in *Trustees of the Colorado Carpenters & Millwrights Health Benefit Trust Fund v. Pinkard Construction Co.,* 39 Colo. App. 564, 574 P.2d 506 (1977). In the *Sheet Metal Workers* case, a certiorari petition was granted and accordingly, it was transferred to this court pursuant to

---

[1] The cause of action involved here is based upon rights created under the Colorado Public Works Contractors' Bond Statute. §§38-22-101 *et seq.,* C.R.S. 1973. The *Trustees* case, based upon work performed prior to 1973, was brought under the antecedent statutory provisions. §§86-7-1 *et seq.,* C.R.S. 1963.

[2] Travelers Indemnity Co., as surety to both contractors as required by statute, was also a respondent here.

C.A.R. 50 from the court of appeals before judgment in that court. We reverse the judgment in each case.

## I.

■ The first issue for determination is whether the benefits earned by the construction workers and required to be paid into the trust funds were "payments of . . . amounts lawfully due to all persons supplying or furnishing [a contractor] or his subcontractors with labor or materials used or performed in the prosecution of the work provided for in such contract . . . ." Section 38-26-105, C.R.S. 1973. This provision specifically requires that any contractor, who has been awarded a public works contract, must post a penal bond with sufficient surety to cover the above amounts due. If the contractor or subcontractor fails to make these payments, "[s]ubcontractors, materialmen, mechanics, and others may have a right of action" against both the principal and surety of the bond. *Id.* In the instant cases, both petitioners filed suit against the contractor-principals and sureties.

Respondents contend that section 38-26-105 only applies to amounts directly payable to the laborer, and since the moneys involved here were to be paid to trust funds, this statutory provision is not applicable. We disagree. The trust funds in these cases, created specifically for the purpose of receiving payments of this type, comply with federal requirements, which preclude payment directly to the employee or to the labor union. 29 U.S.C. §186(c) (1976). Nevertheless, benefits such as these are "payments . . . lawfully due" under the collective bargaining agreements involved here. The legislature has made no such distinction regarding to whom the payments are made, and we find no reason to establish one here. *Cf. Hartman v. Freedman,* 197 Colo. 275, 591 P.2d 1318 (1979) (holding that vacation pay, not yet paid to the employee, was "wages" or "compensation" as defined by section 8-4-104(9), C.R.S. 1973).

■ The Supreme Court of the United States, in interpreting a provision of the Miller Act, 40 U.S.C. §270a *et seq.* (1952), which is the federal equivalent of our Contractors' Bond Statute, held that health and welfare benefits paid into a trust fund

"were part of the compensation for the work to be done by [the contractor's] employees . . . . Not until the required contributions have been made will [the contractor's] employees have been 'paid in full' for the labor in accordance with the collective bargaining agreements."

*United States ex rel. Sherman v. Carter,* 353 U.S. 210, 217-18, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957). This is sound legal reasoning and we adopt it as applicable here. In the instant cases, the moneys to be paid into the trust funds involved vacation benefits, retirement pension benefits, health insurance payments, unemployment insurance payments, and apprenticeship and industry advancement funds. Each one of these benefits was agreed to be paid by the subcontractors in exchange for the work done

by the construction workers. Until these were paid into the trust funds, the compensation to the workers was not fully paid. Therefore, the recovery of these unpaid amounts was actionable and the trial court in each case erred in dismissing the complaints.

The respondents', the trial courts' and the court of appeals' reliance on *Ridge Erection Co. v. Mountain States Tel. & Tel. Co., supra,* is misplaced. Granted, the Contractors' Bond Statute was enacted to compensate for the fact that the Mechanics' Lien Law did not apply to projects constructed through contracts with governmental agencies. *Continental Casualty Co. v. Rio Grande Fuel Co.,* 108 Colo. 472, 119 P.2d 618 (1941). But what has been overlooked is the different language in each of the relevant statutes.

Under the Mechanics' Lien Law, a lien can be filed for "the value of . . . labor done . . . ." Section 38-22-101(1), C.R.S. 1973. Subsequent to the facts leading to the action in *Ridge, supra,* the legislature added subsection (4), which further defined "value" to include those unpaid fringe benefits sought here. The court of appeals held, and properly so, that the subsequent modification of the statute creates a presumption that the new language was not intended to be applicable before the amendment.

The language of the Contractors' Bond Statute is quite different. The penal bond mandated in section 38-26-105 is to cover "amounts *lawfully due.*" (Emphasis added.) It is this language which mandates inclusion of unpaid fringe benefits in the legal remedy provided by section 38-26-105.

## II.

The second question which must be resolved is whether either of the petitioners have standing to sue on a cause of action under section 38-26-105. Respondents have again urged that *Ridge, supra,* is dispositive. They assert that a cause of action is only created for the persons who actually provided the services. Like the first issue, the respondents have failed to recognize the distinct differences in the language of the Mechanics' Lien Law and the Contractors' Bond Statute.

In *Ridge, supra,* the court of appeals, in *dictum,* addressed the issue regarding whether a trustee can file a lien in its own name without an assignment by the individual workers involved. The court held that the trustee could not because the Mechanics' Lien Law did not provide for the right of a trustee to file a lien in its own right. Section 38-22-101(1), C.R.S. 1973, prior to the addition of subsection (4), provided for a lien *only* by the persons actually performing the work. It was the amendment which created a lien right in "the trustee of [a fringe benefit] trust."

Section 38-26-105, C.R.S. 1973, on the other hand, creates a right in "[s]ubcontractors, materialmen, mechanics, *and others*" to bring an action. (Emphasis added.) Such statutory language surely

contemplated a more expansive group than that created by the Mechanics' Lien Law. Any other interpretation would render the term "and others" useless. Statutory language should not be given a meaning which renders it useless. *City and County of Denver v. Taylor,* 88 Colo. 89, 292 P. 594, 72 A.L.R. 833 (1930). We therefore hold that in adopting the term "and others," the legislature intended to include those persons who had a legal interest in the disputed contract and brought suit on behalf of the construction workers. *See United States ex rel. Sherman v. Carter, supra.*

This definition would include both petitioners here. The Trustees of the Carpenters Funds were the holders of the legal interest in the express trusts created by the collective bargaining agreement. The trustees had a fiduciary duty to protect the funds and enforce the right to payment of those funds into the trust. Similarly, the Sheet Metal Workers Union was the agent of the workers and had negotiated the collective bargaining agreement which included the trust on their behalf. Not only did the Sheet Metal Workers Union have a legal interest in enforcing the contract itself, but also had a duty to protect the members covered by it. *See generally* 29 U.S.C. §§158(b) and 185 (1976); *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

We reverse the judgments of the trial court and the court of appeals in the Carpenters Funds case and the Sheet Metal Workers case, and remand the causes for further proceedings not inconsistent with this opinion.

Judgments reversed.