461 So.2d 144 (1984)
SPRINKLER FITTERS and APPRENTICES LOCAL UNION NO. 821, U.A., a Labor Organization, Roy Citty, Jr., Dale Cress, Ricky Diaz, Steve Gilnet, Burton Mears, Hershall Mears, Phil Neiendam, V.O. Orr, Jerry Patterson, Billy H. Rayburn, David Ziroff, National Automatic Sprinkler Industry Welfare Fund, National Automatic Sprinkler Industry Pension Fund, and U.A. Local 821 Joint Apprenticeship Training Program Fund of the State of Florida, Appellants,
v.
F.I.T.R. SERVICE CORPORATION, F/K/a Frank H. Inscho & Associates, Inc., a Dissolved Florida Corporation, and Fidelity and Deposit Company of Maryland, a Foreign Corporation, Appellees.
No. 83-1595.
District Court of Appeal of Florida, Third District.
November 27, 1984.
Rehearing Denied January 22, 1985.
*145 Joseph C. Segor, Kaplan, Sicking, Hessen, Sugarman, Rosenthal & De Castro, Miami, for appellants.
Paul, Landy, Beiley & Harper and Stanley A. Beiley and David S. Garbett, Miami, for appellees.
Before HENDRY, BARKDULL and DANIEL S. PEARSON, JJ.
PER CURIAM.
The appellants, the plaintiffs below, sued the appellees to enforce their claims of lien and other union-related benefits. The trial court dismissed the suit with prejudice, and the appellants took this appeal. We affirm the order of dismissal, solely because we conclude that the labor performed by the appellants on the Quayside project was not performed under a "properly authorized contract" as is statutorily required and *146 that, therefore, the appellants were not entitled to place a lien on the property.
The statutory definition of a "laborer" is that the "laborer" must perform labor under a "properly authorized contract." § 713.01(9), Fla. Stat. (1981). The Mechanics' Lien Law does not define the phrase "properly authorized contract." Section 713.01(1), Florida Statutes (1981), however, defines the term "contract" as "an agreement for improving real property, written or unwritten, express or implied, and includes extras or change orders as herein defined." The complaint does not allege that the individual plaintiffs, employees of a sub-subcontractor, Omni Fire Protection Corporation, entered into a contract for the improvement of real property at Quayside. Instead, the complaint alleges the existence of two other contracts: first, a contract between Inscho, another subcontractor, and Omni by which Inscho subcontracted the installation of fire sprinklers to Omni; and second, a collective bargaining agreement entered into by the union, to which agreement Omni allegedly became bound.
Neither of these two contracts comes within the statutory definition of "contract" under Section 713.01(1), nor can they be the "properly authorized contract" referred to in Section 713.01(9), Florida Statutes (1981). A "properly authorized contract" is one directly between the individual or entity claiming to be a "laborer" and either the owner, general contractor, subcontractor, sub-subcontractor or materialman on the project.
Section 713.06(1), Florida Statutes (1981), provides in part:
"A materialman or laborer, either of whom is not in privity with the owner, or a subcontractor or sub-subcontractor who complies with the provisions of part 1 and is subject to the limitations thereof, shall have a lien on the real property improved for any money that is owed to him for labor, services, or materials furnished in accordance with his contract and with the direct contract."
Section 713.06(1) grants to a laborer the right to place a lien on real property improved as a result of labor furnished in accordance with "his contract" and the "direct contract" permits the owner to make proper payments directly to laborers for labor "performed by them and covered by the direct contract... ." The language evinces the legislative intent of requiring a specific contractual relationship between laborers and a lienor on the project.
Neither of the contracts alleged in the complaint is a "properly authorized contract" under Section 713.01(9). The contract between Inscho and Omni is not a "properly authorized contract" because none of the employees of Omni are a party thereto. The collective bargaining agreement, which sets forth conditions for employment of union members, is not a "properly authorized contract" because it is not "an agreement for improving real property" within Section 713.01(1). See, e.g., Acadia Development Corp. v. Rinker Materials Corp., 419 So.2d 1142 (Fla. 3d DCA 1982); E.V. Construction Co. v. Newman, 418 So.2d 291 (Fla. 3d DCA 1982).
The Legislature has recently instructed us in 1977 that the Mechanics' Lien Law is to be strictly construed and not to be given a liberal construction as in the past. See Section 713.37, Florida Statutes (1983), which reads as follows:

"Rule of construction  This part shall not be subject to a rule of liberal construction in favor of any person to whom it applies."
The union contract the individual laborers claim under was not entered into in contemplation of work at Quayside. Quayside was not a party to this agreement, nor is there any indication that they were ever aware of its existence. For all we know from this record, this union agreement could have been entered into months before the work commenced on Quayside or much later. Such an agreement, as aforesaid, was certainly not one directly contributing to the improvement of Quayside.
Accordingly, the order under review is affirmed in all respects.
Affirmed.
*147 DANIEL S. PEARSON, Judge, concurring in part; dissenting in part.
I would hold that a subcontractor's employees who worked on the installation of a fire sprinkler system on certain real property but were not paid the wages due to them are "laborers" as that term is defined by Section 713.01(9), Florida Statutes (1981), and thus entitled to claim liens on the property. I would further hold that such liens may not include amounts due for such items as vacation pay, fringe benefit payments, and union dues, all required to be paid by the subcontractor and the union to which the employees belong, but that the inclusion of such additional amounts does not render the claims of lien fraudulent and therefore unenforceable.
Quayside Associates, Ltd., the owner of certain real property, hired F.I.T.R. Service Corporation as its contractor to improve certain real property. F.I.T.R., in turn, subcontracted with Omni Fire Protection Corporation to install a fire sprinkler system in the project. The system was installed and Omni was paid. Omni, however, failed to pay its employees,[1] among whom were eleven individuals who worked on the installation of the system. These individuals filed timely claims of lien for wages and other benefits due under a collective bargaining agreement between their union and employer and, joined by their union and the trustees of related welfare and pension funds, thereafter sued to enforce the liens. Upon the defendants'[2] motions to dismiss, the suit was dismissed with prejudice, apparently on the grounds urged in the motions, namely, that the individual plaintiffs were not within the "class of persons entitled to protection under the Mechanics' Lien Law" or that the claims of lien were facially fraudulent. I would reverse the order of dismissal as to the individual plaintiffs (Roy Citty, Jr., Burton Mears and Hershall Mears) who have filed liens for wages due; as to all other plaintiffs, I agree that the order under review should be affirmed.

I.
Section 713.01(9), Florida Statutes (1981), provides:
"`Laborer' means any person ... who, under properly authorized contract, personally performs on the site of the improvement labor or services for improving real property and does not furnish materials or labor services of others."
It seems clear from the plain language of Section 713.01(9) that the plaintiff-workers who, it is alleged, personally performed labor on the site of the improvement, are to that extent laborers within the statutory definition. My reading of the statute fully comports with the holding in Florida Fruit Co. v. Shakelford, 145 Fla. 216, 198 So. 841 (1940), that under the 1935 Mechanics' Lien Law, Ch. 17097, § 1, Laws of Fla. (1935) (defining "laborer" almost exactly as it has since been and is now defined), a contractor's employees who had performed labor on the site of the improved property and were unpaid were entitled to file a claim of lien against the owner's property notwithstanding that the owner had paid the contractor.
The appellees contend, however, that although these individual plaintiffs may have personally performed labor on the site of the improvement, they are nonetheless not laborers within the statutory definition of that term, because first, the labor performed was not pursuant to a "properly authorized contract" as the statute requires, and second, they furnished "labor services of others," which the statute exempts from the definition of laborer.

A.
The statute does not define "properly authorized contract." A "contract" is defined in the statute as "an agreement for *148 improving real property, written or unwritten, express or implied, and includes extras or change orders as herein defined." § 713.01(1), Fla. Stat. (1981). "Improve" is defined as "build, erect, place, make, alter, remove, repair, or demolish any improvement over, upon, connected with, or beneath the surface of real property, or excavate any land, or furnish materials for any of these purposes, or perform any labor or services upon the improvements, including ... [performing] any labor or services or furnish any materials in ... equipping any improvement with fixtures or permanent apparatus." § 713.01(7), Fla. Stat. (1981). "Improvement" is defined as "any building ... or any part thereof existing, built ... on land or other real property for its permanent benefit." § 713.01(8), Fla. Stat. (1981).
The appellees argue that the labor was not performed under a properly authorized contract because the contract under which Omni's employees worked was a collective bargaining agreement between their employer and their union, which is not an agreement for improving real property. The employees counter that the phrase "under a properly authorized contract" does not require that the contract under which the labor is performed be an agreement for improving real property, but requires only that there be a connexity between the labor performed and such an agreement. It follows, say the employees, that their labor was performed under a properly authorized contract because their labor was performed pursuant to an agreement between their union and Omni; Omni, in turn, was engaged by the contractor to improve the real property by installing a fire sprinkler system thereon; and F.I.T.R. had an agreement with the owner to improve the owner's real property by, inter alia, installing a fire sprinkler system.
In my view, the employees are correct. The Mechanics' Lien Law provides that a laborer not in privity with the owner "shall have a lien on the real property improved for any money that is owed to him for labor ... furnished in accordance with his contract and with the direct contract." § 713.06(1), Fla. Stat. (1981) (emphasis supplied). Thus, labor is performed "under a properly authorized contract" when it is performed in accordance with a contract calling for its performance so long as such contract is in the chain of contracts ultimately tied to, or derived from, the direct contract between the owner and another which calls for improving real property. See Foley Lumber Co. v. Koester, 61 So.2d 634 (Fla. 1952); Lee v. Sas, 53 So.2d 114 (Fla. 1951); 1 Rakuson, Florida Mechanic's Lien Manual Ch. 2 (1974). See also Broderick v. Overhead Door Co. of Fort Lauderdale, 117 So.2d 240 (Fla.2d DCA 1959). As the court in Morin Lumber Co. v. Person, 110 Mont. 114, 99 P.2d 206 (1940), explained:
"[T]he owner must consent in advance to the improvement either expressly or impliedly, or subsequently ratify what has been done. The correct rule is stated in 40 C.J. 139, as follows: `The right to a mechanic's lien is not confined to persons contracting directly with the owner of the property, or performing labor or furnishing material with the actual knowledge of the owner, but extends to persons who do work and furnish materials under contract with, or employment by, the contractor. It is sufficient if there is a contract between the owner and some one for the improvement of the property; claimant is a laborer, materialman, or subcontractor under contract with, or employment by, the contractor; and he does work or furnishes material for the contractor in pursuance of the latter's agreement with the owner. However, to be entitled to a lien, a claimant must connect himself with the owner in some way, directly or indirectly, by some link of a contractual nature; as in all cases, the owner must have contracted with some one for the improvement of the property or at least must have authorized, requested, knowingly permitted or consented to such improvement.'" 99 P.2d at 207.

B.
I next address the appellees' argument that the employees are not laborers within *149 Section 713.01(9) because they "furnish ... labor services of others." The appellees' brief contends that "[c]learly, an employee who performs labor on the project is furnishing the labor service of his employer, thus disqualifying the individual employee from being a `laborer' under the Act." I disagree. I believe the phrase "furnish ... labor services of others" was meant to exclude from the definition of laborer a person who recruits and supplies laborers, such as a manpower organization. Had the Legislature intended to exclude the actual laborer, the phrase would have read "furnish ... labor services for others." Moreover, to accept appellees' contention would be to eliminate from the protection of the Act all laborers, save only those who are employed directly by the owner. Because, as I have said, laborers need not be in privity with the owner in order to be afforded lien rights under the Act, the reading of the Act suggested by the appellees is patently unacceptable.

C.
My conclusion that the plaintiff-workers are within the class of persons entitled to protection under the Mechanics' Lien Law is not at odds with what is concededly one of the law's major purposes, that is, to protect an owner from having to pay twice for the same labor, see Peninsular Supply Co. v. C.B. Day Realty of Florida, Inc., 423 So.2d 500 (Fla. 3d DCA 1982); Morgan v. Goodwin, 355 So.2d 217 (Fla. 1st DCA 1978). Contrary to the appellees' suggestion, sanctioning the liens of laborers does not make an owner an absolute guarantor of the solvency of the laborers' corporate employer or render meaningless the proper payment provisions of the Act.
It must be remembered that "one of the cardinal purposes of the [Mechanics' Lien Law] was to protect the laborer in the collection of his wages." Florida Fruit Co. v. Shakelford, 198 So. at 841. The Act thus affords laborers protection which is not afforded to other lienors. For example, a laborer, unlike other lien claimants, need not give notice to an owner that he is working on a project as a predicate to filing a claim of lien. § 713.06(2)(a), Fla. Stat. (1981). And where an owner has made proper payments and there are inadequate funds to pay all lienors, laborers must be paid before any other lienor. § 713.06(4)(a), Fla. Stat. (1981).
But although a laborer is specially protected by the Act, this special protection does not conflict with the protection given an owner who makes proper payments under the Act. If an owner complies with Section 713.06, Florida Statutes (1981), which details the method for making proper payment, and there are no funds remaining, the laborers will not be paid, and if there are insufficient funds to pay all laborers in full, then the laborers, as a class, will be paid a pro rata share of the ramaining funds, § 713.06(4)(a) and (b). Only when the owner does not follow the statutory method for making proper payments does the property improved become subject to the full amount of all valid liens, either those "of which the owner has notice at the time the contractor furnished his affidavit," § 713.06(3)(d) 6, or laborers' liens, which are exempt from the notice requirement, § 713.06(2)(a).
It can be seen, therefore, that an owner who complies with the statute will not be required to make double payments. If the owner does not comply with the statute, the only "hidden" liens and possible double payments to which he is exposed are those of the laborer. Thus it is that the Legislature has struck a balance between the need of laborers as a class to be relieved from the cumbersome procedures of giving notice, see Comment, The Florida Mechanics' Lien Act, 14 U. Miami L.Rev. 73, 80 (1959) ("The act also exempts [laborers] from as much formality and `red tape' as is practical, ..."), and the minimal risk to the owner which this lack of notice will involve, see Ervin, Revised Mechanics' Lien Law: The Whys and Wherefores, 37 Fla.B.J. 1095, 1096 n. 3 (1963) ("Labor cost has never been a serious problem as a `hidden lien' as laborers in all but the most exceptional cases do not remain and continue to work *150 on a job unpaid. Union rules and practices also prevent their members from going or remaining on a job where a contractor, subcontractor or other employer is in default of payment of wages of their members or other laborers."). See also Morgan v. Goodwin, 355 So.2d 217; Halsey & Tischenkel, Mechanics' Liens, 33 U. Miami L.Rev. 1103 (1979); Park, Florida's Mechanics' Lien Law, 3 Stetson Int.L.Rev. 105 (1973). But even if this exemption from notice requirements given to laborers may sometimes work an apparent injustice to the owner, the exemption has been legislatively decreed and is not for courts to disturb. Cf. Drake Lumber Co. v. Semple, 100 Fla. 1757, 130 So. 577 (1930). As was stated in Florida Fruit Co. v. Shakelford, where the court held the owner liable for payment to the contractor's laborers:
"It may be said that this construction of the statute establishes a harsh rule but we, as a court, are not concerned with the question of wisdom or lack of wisdom in a valid statutory enactment. It is our province only to construe the statute as it is written by the Legislature." 198 So. at 842.

II.
I turn now to the question of whether the laborers, their union, and related fringe benefit funds may claim a lien, as they have done, for fringe benefit contributions, vacation benefits, check-offs and the like, that is, for other than actual wages. Although it is unquestionably true that the collective bargaining agreement under which these laborers were employed called for their employer to pay these other items, the question of these plaintiffs' entitlement to a lien against the owner's property must be resolved by looking to the Mechanics' Lien Law.
Section 713.06(1), Florida Statutes (1981), provides that a laborer's lien shall be "for any money that is owed him for labor... furnished in accordance with his contract and with the direct contract." According to Section 713.01(3), the contract price with respect to labor is "the amount agreed upon by the contracting parties for performing all labor," and if no price is agreed upon, "this term shall mean the value of all labor" performed.
While it is certainly arguable that these definitional phrases, liberally construed, are broad enough to include more than the wages actually due the laborer, I cannot give them the liberal construction urged by the plaintiffs. See § 713.37, Fla. Stat. (1981) ("This part [the Mechanics' Lien Law] shall not be subject to a rule of liberal construction in favor of any person to whom it applies."). Accordingly, I do not find persuasive Trustees, Florida West Coast Travel Trades Pension Fund v. Quality Concrete Co., 385 So.2d 1163 (Fla. 2d DCA 1980), upon which the plaintiffs rely. There, the court's holding that the insurer under a performance bond on a public works contract issued pursuant to Section 255.05, Florida Statutes, could be held liable for contributions on behalf of laborers to union pension funds where the bond called for the insurer to pay the debts incurred by any subcontractor in the prosecution of the work, "including those for labor," was expressly bottomed on the perceived need to construe Chapter 255 liberally in order to effectuate the statute's remedial object of protecting laborers and materialmen on public works projects.[3] For the same reason, the plaintiffs' reliance on Dobbs v. Knudson, Inc., 292 N.W.2d 692 (Iowa 1980) (liberal construction of public works statute required to promote its objects; claim for labor under a contract includes agreed-to fringe benefits), and Farley v. Zapata Coal Corp., 281 S.E.2d 238 (W. Va. 1981) (in light of the public policy that laborers get maximum benefits, court *151 construed "`value of such work or labor' ... to mean all compensation contracted to be paid by the employer for the employee's services regardless of the nature of such compensation." 281 S.E.2d at 242 (emphasis in original)), is misplaced.
I am far more persuaded that the balance which the Legislature has struck between the need of laborers as a class to be relieved from the cumbersome procedure of giving notice and the minimal risk to the owner which this lack of notice will involve is maintained only when laborers' liens are restricted to wages actually due them. While it may be true that an owner is exposed to minimal risk because "an individual laborer will not work long without pay and consequently will not have a large hidden claim," Morgan v. Goodwin, 355 So.2d at 218, it appears, as the present case dramatically illustrates, that an individual laborer will continue to work so long as his actual wages are paid to him even though his employer fails to make required contributions to the laborer's union and related trust funds.[4] Thus, the large hidden claim which one confidently assumes will be minimal in respect to laborers is far from minimal when the laborers' lien is allowed to include overdue payments to their union and fringe benefit funds.
I recognize, however, that my conclusion that the laborers' lien is limited to wages is far from self-evident. Because it was hardly free from doubt that the laborers herein were not entitled to claim liens for amounts beyond actual wages,[5] it can hardly be said that they "willfully exaggerated the amount for which such lien is claimed" so as to make their liens fraudulent and thus unenforceable under Section 713.31(2), Florida Statutes (1981).[6]
Accordingly, I would reverse the order dismissing the action below with prejudice as to those plaintiff-laborers (Roy Citty, Jr., Burton Mears and Hershall Mears) whose liens include wages due and remand for further proceedings on their claims of lien to the extent of the wages; I would affirm the order insofar as it dismisses the claims of the remaining plaintiffs, the union and the trustees of the related funds.[7]
NOTES
[1] Apparently, after F.I.T.R. paid Omni, Omni became bankrupt.
[2] The defendants, appellees herein, are F.I.T.R. and Fidelity and Deposit Company of Maryland, which on behalf of the owner posted surety bonds to which the claims of lien were transferred.
[3] The court noted that Section 255.05, Florida Statutes, was patterned after the Miller Act, 40 U.S.C. § 270a, et seq. (1982), and relied on cases decided under this federal counterpart. Those cases, see, e.g., United States ex rel. Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), held that since the Miller Act is remedial in nature, it must be interpreted liberally to afford the greatest protection for those whom it seeks to protect, namely, laborers and materialmen on public works projects.
[4] The total amount of the liens filed is $20,220.15. Of this amount, only $1,827.60 is for wages due for what appears to be one week's work for several laborers. All other amounts due are for fringe benefit contributions, vacation benefits, check-offs and the like, which accumulated as a result of some 4,617 hours work performed by all laborers over a more than three-month period from November 1, 1981, through February 5, 1982.
[5] The plaintiffs' contention that fringe benefit contributions and the like should be included in the lien finds support in Hawaii Carpenters' Trust Funds v. Aloe Development Corp., 63 Hawaii 566, 633 P.2d 1106 (1981). While I believe that Trustees of Colorado Carpenters v. Pinkard Construction Co., 199 Colo. 35, 604 P.2d 683 (1979) (Colorado statute which provides lien for "payments of ... amounts lawfully due to all persons supplying ... labor or material" (emphasis supplied) held to permit claim of lien to include payments to the laborers' pension trust), is readily distinguishable because of the different statutory language, I nonetheless concede that it arguably supports the plaintiffs' position. Similarly, cases holding that a materialman's overhead and profit are lienable provided these items are included in the contract price or are reflected in the reasonable value of materials furnished, see Haney Chevrolet, Inc. v. Poli Bros., Inc., 262 So.2d 230, 231 (Fla. 4th DCA 1972); accord, Surf Properties, Inc. v. Markowitz Bros., 75 So.2d 298 (Fla. 1954); Broderick v. Overhead Door Co., 117 So.2d 240, although distinguishable on the ground that the materialman's earnings, unlike the laborer's, depend on the inclusion of these items, cannot be said to be totally inapposite.
[6] Section 713.31(2), Florida Statutes (1981), provides in pertinent part:

"(a) Any lien asserted under this Part I in which the lienor has willfully exaggerated the amount for which such lien is claimed ... or in which the lienor has compiled his claim with such willful and gross negligence as to amount to a willful exaggeration shall be deemed a fraudulent lien.
"(b) It shall be a complete defense to any action to enforce a lien under this Part I, or against any lien in any action in which the validity of the lien is an issue, that the lien is a fraudulent lien; and the court so finding is empowered to and shall declare the lien unenforceable, and the lienor shall thereupon forfeit his right to any lien on the property upon which he sought to impress such fraudulent lien."
[7] Although the appellees' brief contends that the union and the trustees of the welfare and pension funds have no standing to assert claims of lien, they made no such contention below. Ordinarily, this would preclude review of their contention. Here, however, since the laborers' claim of lien is limited to wages, it necessarily follows that the laborers are the only proper plaintiffs in the suit and that the union and the trustees' claims must be dismissed. Therefore, I do not address whether this same result would obtain were the claims of lien held to include check-off and fringe benefits. See § 713.06, Fla. Stat. (1981) ("no person shall have a lien under this section except those lienors specified in it... .). Compare Trustees of Colorado Carpenters v. Pinkard Construction Co., 604 P.2d 683 (trustees have standing to sue under Mechanics' Lien Statute creating right of action in "subcontractors, materialmen, mechanics and others"), with Ridge Erection Co. v. Mountain States Telephone & Telegraph Co., 37 Colo. App. 477, 549 P.2d 408 (1976) (under prior Colorado Mechanics' Lien Statute, which did not include "others," trustees could not assert lien where not included in specified classes of persons entitled to claim liens).