ALFRED M. AMII, DOING BUSINESS AS HOME
PLANNING & BUILDING SERVICE *v.* HAROLD
KIU WING FONG AND BEATRICE KAM HU
FONG, DOING BUSINESS AS HOUSE IN THE
GARDEN, AND ANNIE K. ADAMS.

NO. 2872.

ARGUED JANUARY 22, 1953.          DECIDED SEPTEMBER 11, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY LE BARON, J.

This is a suit by a contractor to enforce a mechanic's
and materialman's lien for improvements in the value of
$3251.60 which he made upon the main building on cer-
tain real property when it was subject to a written agree-
ment of sale. The suit is against both the vendor and the
vendee. The improvements constitute repairs, alterations,
and additions in remodeling and renovating the build-
ing. They were made and completed, pursuant to a con-
tract between the contractor and the vendee, while the
vendee was in possession. The vendee remained in pos-
session for approximately eighteen months but failed to
pay for the improvements and fell behind in his monthly

payments of $1000 under the agreement of sale. The vendor then exercised her right under that agreement by canceling it, repossessing the property inclusive of the improvements and retaining, as liquidated damages, $10,000 which the vendee had paid her on executing the agreement and, in lieu of rent, all the monthly payments which he had paid her thereafter. The lien for the improvements was duly perfected. Concededly it attached to the vendee's interest before forfeiture thereof by the vendor. The sole issue of merit litigated below was whether it likewise attached to the vendor's interest and title in fee simple. The chancellor found that it did not and decreed judgment only against the vendee. The contractor appeals on two grounds.

But one ground of appeal need be considered. It is that "the terms of [the agreement] of sale * * * require the improvement [s]" so as to subject the vendor's interest to the lien within the meaning of statute. (R. L. H. 1945, § 8769, as am., S. L. H. 1949, Act 241 and Sp. Sess. 1945, Act 28.)

The pertinent terms of the agreement are those by which the vendee covenanted "at [his] own cost and expense to put [the main building] in good order, condition and repair." By necessary implication, the covenant to put a building in good order, condition and repair not only denotes that the building was below the level of that state of improvement when the parties signed the agreement but connotes a duty to bring it up to that level immediately or within a reasonable time. (See *Gerzebek* v. *Lord,* 33 N. J. L. 240; *Tyson* v. *Weil,* 169 Ala. 558, 53 So. 912; *Marsicano* v. *Phillips,* 6 Ala. App. 229, 60 So. 533.) The requirement thereunder is a relative one. It varies in its demands with the degree of the building's deterioration and with the purposes for which it is to be used. It

is broader than the mere duty to repair and includes the obligation to make alterations and additions where reasonably necessary to adapt the building to those purposes. To ascertain its meaning as to the particular purposes involved and as to the extent of improvements required, the covenant must be construed with the agreement as a whole in the light of the circumstances under which it was executed.

The building is an old-fashioned, ornate and wooden structure, originally designed for a dwelling of generous and luxurious proportions. But, with the passage of time, it has long since ceased to be used as a dwelling. In recent years it has been subjected to the improvised use of commercial entertainment. The vendor had so used it without success prior to executing the agreement of sale. In negotiating with her the vendee proposed not only to continue that use but to modernize the building itself for successful entertainment purposes as his reason for purchasing it. He testified that before the vendor considered selling "on a number of occasions * * * she asked me what I had in mind as far as the place was concerned. And I would have to explain to her that my intention, as far as the place was concerned, was to run it along the same lines that she was doing, only that in order to make a success of the thing, it would be necessary to have the place completely renovated." The evidence is undisputed that when the agreement was prepared and signed, the vendor knew "exactly what [the vendee] had in mind" with respect to making the improvements and approved of them as being "right" and as "more effective in bringing in business." That those improvements were reasonably necessary to adapt the building to the purposes for which both parties understood it was to be used is patent from the condition of the building when the

parties executed the agreement. That condition was well known to both parties. The building had been partially dismantled and had fallen into partial ruin or decay. Its foundations were crooked. One of its floors humped in the center. Walls, ceilings and joists needed replacement. It was so thoroughly termite eaten that the removal of one infested board called for a workman "to go straight on down and take everything out." It was correctly described by witnesses to be "a mess." Such are the facts and circumstances under which the agreement was executed.

Construed in the light of those circumstances, the terms of the vendee's covenant required him to make the improvements which in the opinion of this court amount to nothing more than a reasonable fulfillment of his obligation thereunder. In correlation, the making of them reasonably constituted a putting of the partially dismantled and dilapidated building in good order, condition and repair so as to render it suitable for the purposes for which it was to be used. This construction is a reasonable and fair one consistent with the practical interpretation which in effect the parties themselves put upon the covenant. Certainly the vendee in making those improvements interpreted his covenant as requiring them. Presumably the vendor likewise interpreted it as indicated by her subsequent acts and conduct. She was in constant attendance "practically all the time" while the improvements were being made preparatory to the vendee's occupation and "seemed very happy about the whole thing [as well as] very pleased with everything." She is assumed to have been alert to protect her own interests, particularly on completion of the improvements when she declared the building to be "pretty nicely fixed up." Nor is she in a position to be at variance

with this practical interpretation now that she is enjoying the benefit of those same improvements as well as $10,000 in liquidated damages which more than compensate her for the vendee's breach of covenant to pay $3251.60 for the improvements.

The vendor, nevertheless, advances the argument that the statute does not apply because the terms of the agreement or contract of sale does not by its plain meaning literally require the particular improvements under consideration. Any efficacy which such an argument may have depends upon a strict rather than a liberal construction of the portion of statute operating to extend a mechanic's lien so that it attaches to the vendor's interest as well as to that of the vendee.

It is already well settled in this jurisdiction, however, that "the remedial portions of mechanic's lien statutes should be liberally construed" and that "the duty of the courts is to see that those whom the law intended to protect shall enjoy the advantages which it confers." (*Lewers & Cooke, Ltd.* v. *Wong Wong,* 22 Haw. 765, 768.) It is equally well settled that only "the other parts [not involved in the question under consideration in this case], those upon which the right to the existence of the lien depends, being in derogaton of the common law, should be strictly construed." (*Lewers & Cooke, Ltd.* v. *Wong Wong, supra.*) The provision of statute in broadening the scope of an existing mechanic's lien, as it does, patently affords added protection to the lienor and is clearly remedial. By its language, this remedial provision is invoked where "the terms of a * * * contract of sale *.* * require the improvement." (R. L. H. 1945, § 8769 as am.) The term "improvement" as employed therein is defined by statute to include "the construction, repair, alteration of or addition to any building." (S. L. H.

1949, Act 241, § 8769.01.) This statutory definition agrees in meaning with the improvements made in this case. The provision of course applies to a case where the improvements are segregated and set forth in particular and are literally required to be made by the terms of the sales contract. But nothing expressed or implied therein limits it to such a case. Liberally construed, the provision also applies to a case where the terms of a contract of sale require the improvements when the contract itself is construed as a whole in the light of the surrounding circumstances and particularly when the contract, so construed, is consistent with the practical interpretation which the parties themselves have put upon those terms by their subsequent acts and conduct. Such an application operates to secure to the lienor, pursuant to equity and fair dealing, the added protection conferred by the legislature. The remedial provision thus applies with full force to the instant case. As between the parties to the agreement or contract of sale, the vendor presumably has been satisfied in full by liquidated damages for the vendee's breach of covenant to pay for the improvements. But neither the vendee's breach nor the vendor's forfeiture of his interest affects the statutory right of the contractor as lienor to enforce his lien.

Decree reversed, and the cause remanded with instructions to enter a new decree in favor of the contractor and against both the vendee and the vendor consistent with this opinion.

*N. K. Chung* (also on opening brief; *L. S. C. Louis* with him on reply brief) for appellant.

*H. C. Schnack* (*F. Schnack* with him on the brief) for appellee Annie K. Adams.