HAWAII CARPENTERS' TRUST FUNDS (Pension Trust Fund, by its Trustees Ed F. Fitzsimmons, Richard Hirano, Richard K. W. Tom, Stanley S. Yanagi, Stanley Ito, and Masayuki Yamamoto; Health and Welfare Trust Fund, by its Trustees Robert M. Kaya, Raymond Nagata, Albert Hamamoto, Yoshio Hokamura, Mitsuo Yakuma, and Masayuki Yamamoto; Apprenticeship & Training Trust Fund, by its Trustees Kenneth Shioi, Fred Fleischmann, Keiji Nakano, Stanley S. Yanagi, Stanley Ito, and Edward Cantere; Vacation and Holiday Trust Fund, by its Trustees Fritz Hewitt, Bill Park, James M. Takeyama, Stanley S. Yanagi, Masayuki Yamamoto, and Stanley Ito), Lienors-Appellees, to ALOE DEVELOPMENT CORP., a Hawaii Corporation, FINANCE INVESTMENT COMPANY, LIMITED, a Hawaii Corporation, and POLYNESIAN SHORES, INC., a Hawaii Corporation, Owners, to ROVENS CONSTRUCTION CORP., a Hawaii Corporation, Respondent-Appellant

NO. 6865

M. L. NO. 310

AUGUST 31, 1981

RICHARDSON, C.J., OGATA, LUM AND NAKAMURA, JJ., AND RETIRED JUSTICE MARUMOTO, IN PLACE OF MENOR, J., EXCUSED

## OPINION OF THE COURT BY NAKAMURA, J.

May the trustees of an employee benefit trust fund, in the course of an attempt to enforce the obligation of an employer to make fund contributions required under a collective bargaining agreement, claim a lien on real property that has been improved in part through labor performed by employee-beneficiaries pursuant to the agreement? We conclude the Circuit Court of the Second Circuit properly allowed Lienors-appellees Trustees of the Hawaii Carpenters' Trust Funds (hereafter the Trustees) to have a lien for such purpose, pursuant to the Hawaii Mechanic's and Materialman's Lien Law,[1]

---

[1] The section of the lien law at issue is HRS § 507-42, reading:

Any person or association of persons furnishing labor or material in the improvement of real property shall have a lien upon the improvement as well as upon the interest of the owner of the improvement in the real property upon which the same is situated, or for the benefit of which the same was constructed, for the price agreed to be paid (if the price does not exceed the value of the labor and materials), or if the price exceeds the value thereof or if no price is agreed upon by the contracting parties, for the fair and reasonable value of all labor and materials covered by their contract, express or implied.

Where the terms of a lease, contract of sale, or instrument creating a life tenancy require the improvement of the real property, the interest of the lessor, vendor, or remainderman in the improvement and the land upon which the same is situated shall likewise be subject to the lien, and any provision for forfeiture or other penalty against the lessee, vendee, or life tenant in case of the filing of a mechanic's or materialman's lien or actions to enforce the same, shall not affect the rights of lienors.

upon the land and improvements, as well as other interests therein, situated at Kamiloloa, Molokai, and owned by Aloe Development Corp., Finance Investment Company, Limited, and Polynesian Shores, Inc.

## I.

Respondent-appellant Rovens Construction Corp. (hereafter Rovens) was the general contractor for the construction of the Molokai Shores Condominium Apartments, a development sponsored by the foregoing owners and completed in 1977. Parts of the carpentry required on the project were subcontracted to Coles Pacific Corporation, the predecessor of E.W.L. Construction, Inc. (hereafter EWL), who hired approximately twenty carpenters to perform the work during the latter part of 1976 and the early part of 1977. The terms and conditions under which EWL employed them were governed by the Master Agreement Covering Carpenters in the State of Hawaii (hereafter the collective bargaining agreement or the agreement), negotiated between Local 745 of the United Brotherhood of Carpenters and Joiners of America and several employer associations and individual employers.

For each hour of work performed, the agreement required EWL to pay wages at stipulated rates to the carpenters; it further obligated the subcontractor to make agreed contributions to the trust funds to cover "fringe benefits." These funds were established pursuant to trust agreements regulated by the federal collective bargaining law (the Labor Management Relations Act, 1947 — the Taft-Hartley Act). The trust funds are also subject to stringent regulation under the federal law governing employee benefit trust funds (the Employees Retirement Income Security Act of 1974—ERISA). They are maintained for the sole purpose of providing employee benefits, such as pensions, health and sickness insurance, and vacations, for carpenters covered by the collective bargaining agreement. Entitlement to the benefits is determined on the basis of hours of work performed thereunder.

While EWL met its obligation to pay wages to the carpenters, it failed to transmit trust fund contributions to the Trustees for work performed by the carpenters during November and December of

1976 and January 1977. The Trustees filed a timely application for a mechanic's lien in the Circuit Court of the Second Circuit pursuant to HRS § 507-43 on July 20, 1977, and served notice thereof on the owners and Rovens. Honsador, Inc., the surety on a payment bond executed by Rovens, moved to intervene in the proceedings and was permitted to do so. On September 20, 1977, the circuit court filed a memorandum of decision allowing a lien in the sum of $10,000 on the ground that the Trustees were proper assignees of the claims of the carpenters. And an amended notice of lien reflecting the assignments of the individual claims was filed on October 20, 1977. However, the lien has since been discharged through the posting of a bond satisfying the requirements of HRS § 507-45[2] by Honsador, Inc. The circuit court thereafter denied Rovens' motion for reconsideration of the decision, but granted its motion to pursue an interlocutory appeal to this court.

The pertinent inquiries on appeal are the interrelated questions of whether "person ... furnishing labor," as the term appears in HRS § 507-42, includes the Trustees and whether "price agreed to be paid," also as used in § 507-42, covers required contributions to trust funds with a sole purpose of providing "fringe benefits" for carpenters, including those who furnished labor in the improvement of the real property involved.

## II.

Rovens characterizes the circuit court's allowance of the lien as a digression from "the plain and ordinary meaning of the statute" and a contravention of "its purposes and policies." The Trustees, in Rovens' view, "were not proper parties to bring a lien claim since they neither furnished labor nor supplied materials." We disagree,

---

[2] HRS § 507-45 provides as follows:

Any mechanics' and materialmen's lien may be discharged at any time by the owner, lessee, principal contractor or intermediate subcontractor filing with the clerk of the circuit court of the county in which the property is located or with the assistant registrar of the land court (if registered land is affected), cash or a bond for twice the amount of the sum for which the claim for the lien is filed, conditioned for the payment of any sum for which the claimant may obtain judgment upon his claim.

for a disallowance of the lien, indeed, would have contravened the law's purpose and policy. A reading of the law to sanction a resort to the lien process to enforce obligations to make "fringe benefit" contributions is a reasonable construction of HRS § 507-42, entirely consonant with both relevant precedent and the realities of the situation. For "fringe benefits" undoubtedly comprised a significant portion of the "price" agreed to be paid for the labor required in that segment of the construction subcontracted to EWL.[3]

## A.

The Hawaii Mechanic's and Materialman's Lien Law is the lineal descendant of a measure adopted by the Legislative Assembly of the Kingdom of Hawaii, Chapter XXI of the Laws of Hawaii, 1888. Though the statute has been extensively amended, particularly in its procedural aspects, the essential purpose "to properly protect Mechanics and Materialmen who have furnished both time and material for others"[4] has not been altered. Furthermore, the focus of our inquiry here, HRS § 507-42, retains more than a semblance of the original form of § 1 of the seminal law.[5] That the statutory provisions

---

[3] The record discloses that the required contribution to the trust funds for each hour of work amounted to $2.93 in the aggregate. This sum consisted of $1.40 per hour payable to the pension trust fund, $.62 per hour payable to the health and welfare trust fund, $.06 per hour payable to the training trust fund, and $.85 per hour payable to the vacation trust fund.

[4] *See* Rep. No. 69 of the Judiciary Committee, Legislative Assembly-Session, 1888. The report which was submitted in conjunction with the passage of the original lien law stated in part:

The Bill is one that has long been needed in order to properly protect Mechanics and Materialmen who have furnished both time and material for others and until now have had no sufficient security therefor.

[5] Section 1 of Chapter XXI, Laws of Hawaii, 1888, was worded as follows:

Any person or association of persons furnishing labor or material to be used in the construction or repair of any building, structure, railroad or other undertaking, shall have a lien for the price agreed to be paid for such labor or material (if it shall not exceed the value thereof) upon such building, structure, railroad or other

were uncommon in both wording and breadth, even in their pristine form, was noted early on by our predecessors. In the opinion of the Supreme Court of the Hawaiian Islands, the law was "so radically different from other laws on the same subject, that we can derive but little assistance from the decisions founded upon them." *Lucas v. Redward,* 9 Haw. 23, 24 (1893). *See also Lewers & Cooke, Ltd. v. Wong Wong,* 22 Haw. 765, 769 (1915). And a view expressed by the Territorial Supreme Court in *Hackfeld & Co. v. Hilo Railroad,* 14 Haw. 448 (1902), was that the pertinent language was "very broad, broader, perhaps, than that of the statutes in many of the states." *Id* at 452.

Our predecessors also recognized the statute creating a mechanic's lien was in derogation of the common law and subject to strict construction. *Lucas v. Redward, supra,* 9 Haw. at 25. Hence, they entertained no doubt that the procedural requirements to be met by persons asserting liens were to be strictly enforced. *Lewers & Cooke, Ltd. v. Wong Wong, supra,* 22 Haw. at 767-68. But in considering the law in its remedial aspects, they nonetheless adhered to a precept "that the remedial portions of mechanic's lien statutes should be liberally construed," *id.* at 768. Thus, in *Amii v. Adams,* 40 Haw. 325 (1953), where the scope of the term "improvement" as employed in the law was at issue, they construed it broadly "to secure to the lienor, pursuant to equity and fair dealing, the added protection conferred by the legislature," *id.* at 330. For, as they observed:

It is already well settled in this jurisdiction, however, that "the remedial portions of mechanic's lien statutes should be liberally construed" and that "the duty of the courts is to see that those whom the law intended to protect shall enjoy the advantages

---

undertaking, as well as upon the interest of the owner of such building, structure, railroad or other undertaking in the land upon which the same is situated.

The first paragraph of HRS § 507-42 reads as follows:

Any person or association of persons furnishing labor or material in the improvement of real property shall have a lien upon the improvement as well as upon the interest of the owner of the improvement in the real property upon which the same is situated, or for the benefit of which the same was constructed, for the price agreed to be paid (if the price does not exceed the value of the labor and materials), or if the price exceeds the value thereof or if no price is agreed upon by the contracting parties, for the fair and reasonable value of all labor and materials covered by their contract, express or implied.

which it confers." *(Lewers & Cooke, Ltd. v. Wong Wong,* 22 Haw. 765, 768.) It is equally well settled that only "the other parts [not involved in the question under consideration in this case], those upon which the right to the existence of the lien depends, being in derogation of the common law, should be strictly construed." *(Lewers & Cooke, Ltd. v. Wong Wong, supra.)*
40 Haw. at 329.

## B..

We are considering the law in a remedial aspect, for we are deciding whether the Trustees should enjoy the advantages afforded thereby. But Rovens argues they "furnished" no labor and are not entitled to the protection conferred by the legislature. And it contends precedent in no way supports the Trustees' cause. Our attention is directed instead to *Ridge Erection Co. v. Mountain States Telephone Co.,* 37 Colo. App. 477, 549 P.2d 408 (1976), as case law sustaining Rovens' position.

At first blush, the assertion regarding the Trustees and the cited authority appear determinative of the questions before us. But we are not persuaded that the circuit court erred in allowing the lien. Initially, we find *Ridge Erection Co. v. Mountain States Telephone Co., supra,* inapposite. Discernible textual differences in the Colorado and Hawaii statutes definitely diminish its persuasive value.[6] More importantly, the decision of the Colorado court was consistent with an expression of legislative intent by way of a statutory amendment that ensued after the event precipitating the claim of a lien which was indicative of a prior design not to sanction liens for unpaid fringe

---

[6] The Colorado statute at issue in *Ridge Erection,* § 38-22-101(1), C.R.S. 1973, read in relevant part as follows:

"Every person who supplies machinery, tools, or equipment in the prosecution of the work, and mechanics, materialmen, contractors, subcontractors, builders, and all persons of every class performing labor upon . . . shall have a lien upon the property upon which they have . . . bestowed labor . . . for the value of such . . . labor done . . . ."

benefit contributions.[7] We also eschew the literal reading suggested by Rovens for reasons stated hereafter. .

Rovens criticizes the allowance of the lien as an unwarranted departure from the plain meaning of the words of a statute; it further assails the ruling as an invasion of the legislative domain. We would be inclined to agree if judicial construction were confined to literal readings of statutes. But courts are not always prone to making "a fortress out of the dictionary." *Markham v. Cabell,* 326 U.S. 404, 409 (1945). As the Supreme Court instructs us, "[a]ll construction is the ascertainment of meaning. And literalness may strangle meaning." *Utah Junk Co. v. Porter,* 328 U.S. 39, 44 (1946). We are further enlightened in this regard by the following statement from *Markham v. Cabell, supra:*

> Resort to the policy of a law may be had to ameliorate its seeming harshness or to qualify its apparent absolutes as *Holy Trinity Church v. United States,* 143 U.S. 457 illustrates. The process of interpretation also misses its high function if a strict reading of a law results in the emasculation or deletion of a provision which a less literal reading would preserve.

326 U.S. at 409. *See also State v. Raitz,* 63 Haw. 64, 73, 621 P.2d 352, 359 (1980), where we ventured beyond bare words in search of meaning.

When confronted by a situation like ours in *United States v. Carter,* 353 U.S. 210 (1957), the Court lived by its teachings and read a "person who has furnished labor," as the term appears in the Miller Act, to include the trustees of an employee benefit trust fund. *See* 40

---

[7] The following dicta from the decision of the Supreme Court of Colorado in Trustees of Colo. Carpenters & Millwrights v. Pinkard Constr. Co., ____ Colo. ____, 604 P.2d 683 (1979), provides a definitive explanation of the decision of the Colorado Court of Appeals in *Ridge Erection:*

Under the Mechanics' Lien Law, a lien can be filed for "the value of . . . labor done . . . ." Section 38-22-101(1), C.R.S. 1973. Subsequent to the facts leading to the action in *Ridge, supra,* the legislature added subsection (4), which further defined "value" to include those unpaid fringe benefits sought here. The court of appeals held, and properly so, that the subsequent modification of the statute creates a presumption that the new language was not intended to be applicable before the amendment.

____ Colo. at ____, 604 P.2d at 685.

U.S.C. § 270b.[8] While the scope of the protection of a mechanic's lien law was not the issue there, the meaning of a statutory provision substantially similar to HRS § 507- 42 in purpose and wording was a dispositive question. Although the Miller Act is not structured to further its salutary objective by conferring lien rights, it nonetheless parallels our lien law in purpose, *i. e.,* to protect those who supply labor or materials in the improvement of real property.[9] And a critical term in the Act is "person who has furnished labor," of like consequence as "person . . . furnishing labor," *see* 353 U.S. at 215; note 8 *supra.*

The respondent surety in *Carter* argued in the manner of Rovens that the trustees of an employee benefit trust fund were not entitled to recover unpaid contributions "since they are neither persons who furnished labor or material, nor are they seeking 'sums justly due' to persons who have furnished labor or material." 353 U.S. at 218. Though the Court found the trustees' relationship to the fund's employee beneficiaries "closely analogous" to that of an assignee, the ruling confirmed the trustees' entitlement to recovery under a Mil-

---

[8] 40 U.S.C. § 270b reads in relevant part:

Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him . . . .

[9] A clear statement of the Miller Act's similarity in purpose to mechanic's lien laws appears in F. D. Rich Co. v. Industrial Lumber Co., 417 U.S. 116 (1974), where the Court said:

Section 270a (a)(2) of the Miller Act establishes the general requirement of a payment bond to protect those who supply labor or materials to a contractor on a federal project. Ordinarily, a supplier of labor or materials on a private construction project can secure a mechanic's lien against the improved property under state law. But a lien cannot attach to Government property, see *Illinois Surety Co. v. John Davis Co.,* 244 U. S. 376, 380 (1917), so suppliers on Government projects are deprived of their usual security interest. The Miller Act was intended to provide an alternative remedy to protect the rights of these suppliers.
417 U.S. at 121-22.

ler Act bond in their own right.[10] The Court further concluded the contributions were "in substance as much 'justly due' to the employees who . . . earned them as . . . wages payable . . . in cash." *Id.* at 220. We experience no qualms in following *Carter,* especially in light of the federal statutory provisions governing employee benefit trust funds.

Although § 302(a) of the Taft-Hartley Act[11] generally prohibits employers from making payments to representatives of their employees, § 302(c)(5) of the Act[12] permits employer contributions to employee benefit trust funds satisfying its requirements. By enacting the latter provision, "Congress directed that union welfare funds be established as written formal trusts, and that the assets be 'held in trust' and be administered 'for the sole and exclusive benefit of the employees . . . and their families and dependents . . . .' 29 U.S.C. § 186(c)(5)." *NLRB v. Amax Coal Co.,* ___ U.S. ___, 101 S. Ct. 2789, 2794 (1981). And in approving ERISA, Congress "essentially codified the strict fiduciary standards that a § 302(c)(5) trustee must meet." *Id.* at ___, 101 S. Ct. at 2796. Therefore, "ERISA requires a trustee to 'discharge his duties . . . solely in the interest of the partici-

---

[10] The Court's statement in this regard was:

If the assignee of an employee can sue on the bond, the trustees of the employees' fund should be able to do so. Whether the trustees of the fund are, in a technical sense, assignees of the employees' rights to the contributions need not be decided. Suffice it to say that the trustees' relationship to the employees, as established by the master labor agreements and the trust agreement, is closely analogous to that of an assignment. The master labor agreements not only created Carter's obligation to make the specified contributions, but simultaneously created the right of the trustees to collect those contributions on behalf of the employees. The trust agreement gave the trustees the exclusive right to enforce payment. The trustees stand in the shoes of the employees and are entitled to enforce their rights.

Moreover, the trustees of the fund have an even better right to sue on the bond than does the usual assignee since they are not seeking to recover on their own account. The trustees are claiming recovery for the sole benefit of the beneficiaries of the fund, and those beneficiaries are the very ones who have performed the labor. The contributions are the means by which the fund is maintained for the benefit of the employees and of other construction workers.

353 U.S. at 219-20.

[11] 29 U.S.C. § 186(a).

[12] 29 U.S.C. § 186(c)(5).

pants and beneficiaries . . . .' 29 U.S.C. § 1104(a)(1)." ___ U.S. at ___, 101 S. Ct. at 2796 (footnote omitted). "Indeed, the trustees have an obligation to *enforce* the terms of the collective-bargaining agreement regarding employee fund contributions against the employer 'for the sole benefit of the beneficiaries of the fund.' " *Id.* at ___, 101 S. Ct. at 2798 *(quoting United States v. Carter, supra*, 353 U.S. at 220) (emphasis in the original). A determination that the Trustees of the Hawaii Carpenters' Trust Funds may not seek the aid of our mechanic's lien law in discharging this obligation would ignore relevant federal policy and fly in the face of logic.

We have noted the conclusion in *Carter* that trust fund contributions were "as much 'justly due' to the employees . . . as wages payable . . . in cash." 353 U.S. at 220. The respondent surety's argument there, echoed in substance by Rovens, that the employees had received all wages due them and thus had been "paid in full" was dismissed with dispatch because:

> The unpaid contributions were a part of the compensation for the work to be done by Carter's employees. The relation of the contributions to the work done is emphasized by the fact that their amount was measured by the exact number of hours each employee performed services for Carter. Not until the required contributions have been made will Carter's employees have been "paid in full" for their labor in accordance with the collective-bargaining agreements.

*Id.* at 217-18. We likewise decide the "price agreed to be paid" for the labor of some beneficiaries of the Hawaii Carpenters' Trust Funds will not be paid in full unless required trust fund contributions are received.

The remedial aspects of HRS § 507- 42 have been construed liberally during its long history to accomplish a beneficent purpose of properly protecting "Mechanics and Materialmen who have furnished both time and material for others." *See* note 4 *supra*. We perceive no basis for now concluding they are devoid of a capacity for adjustment to changing patterns of compensation induced by collective bargaining under the federal regime. We would not be recognizing the "vintage" qualities of our lien law if we were to hold it lacks such vitality.

## III.

The ruling of the circuit court was grounded on purported assignments of the laborers' claims. But our decision, like the Supreme Court's in *Carter,* renders it unnecessary to decide whether the Trustees are, in a technical sense, assignees of the beneficiaries. "Moreover, we have repeatedly held that where the trial court has reached a correct conclusion, its decision will not be disturbed on the ground that the reasons it gave for its action were erroneous." *Federal Electric Corp. v. Fasi,* 56 Haw. 57, 64, 527 P.2d 1284, 1289-90 (1974); *accord, Okuna v. Nakahuna,* 60 Haw. 650, 656, 594 P.2d 128, 132 (1979); *Cain v. Cain,* 59 Haw. 32, 36, 575 P.2d 468, 472 (1978); *Waianae Model Neighborhood Area Association v. City & County,* 55 Haw. 40, 43, 514 P.2d 861, 864 (1973).

The order of the circuit court allowing the lien claimed by the Trustees is affirmed, and the case is remanded for further proceedings consistent with this opinion.

*Richard T. Kaneko (Herbert T. Ikazaki* with him on the briefs; *Ikazaki, Devens, Lo, Youth & Nakano,* of counsel) for respondent-appellant.

*David T. Fujikawa (Joseph A. Kinoshita* with him on the brief; *Kinoshita & Fujikawa,* of counsel) for lienors-appllees.