13 P.3d 622 (2000)
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 46, Appellants,
v.
TRIG ELECTRIC CONSTRUCTION CO., a Washington corporation, Lydig Construction, Inc., Fidelity and Deposit Company of Maryland, and Department of General Administration, Respondents.
No. 68504-5.
Supreme Court of Washington, En Banc.
Argued June 20, 2000.
Decided November 16, 2000.
*623 Marston & Associates, Terry Ray Marston, II, Redmond, Amicus Curiae on Behalf of Associated General Contractors of Washington.
Melvin Randall Kang, Amicus Curiae on Behalf of Northwest Ironworkers Trust Funds.
Donaldson, Kiel & McKenzie, Michael Howard Korpi, Seattle, for Appellant.
Ferring, Nelson, Michael H. Ferring, Davis, Wright, Tremaine, John Hitchcock Parnass, Seattle, Christine Gregoire, Attorney General, Spencer Walter Daniels, Asst., Olympia, for Respondent.
SANDERS, J.
We here review an order of the King County Superior Court granting the motion of Lydig Construction Company and the Fidelity and Deposit Company of Maryland to dismiss the complaint of the International Brotherhood of Electrical Workers on summary judgment. Finding no issue of material fact and holding Lydig and Fidelity are entitled to judgment as a matter of law, we affirm the trial court's dismissal of appellant's claim on federal preemption grounds.

FACTS

Background
Appellant is Local Union No. 46 of the International Brotherhood of Electrical Workers (IBEW). Respondents are Lydig Construction, Inc. (Lydig), Fidelity and Deposit Company of Maryland (Fidelity), and Washington State Department of General Administration (GA). Trig Electrical Construction Co. (Trig) was Lydig's subcontractor. IBEW seeks to foreclose Lydig's general contractor's bond posted by Fidelity.
Lydig is a general construction contractor and has been doing business for over 40 years. It has been responsible for several notable building projects at leading educational institutions in this state. At issue here is Lydig's contract to build the State Archives Project at Bellevue Community College. Trig subcontracted with Lydig to perform the project's electrical work.
As required by RCW 39.08, Lydig acquired a surety bond from Fidelity to protect all workers, mechanics, subcontractors, and materialmen supplying material and performing labor on the project. Pursuant to RCW 60.28, the college withheld a portion of the contract price as a retainage trust fund.
A collective bargaining agreement between IBEW and Trig required Trig to contribute a portion of its workers' wages to benefit trust fund plans falling under the ambit of the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. Trig became delinquent on these contributions for the months of December 1997 and January 1998.
On March 24, 1998, IBEW filed a lien notice asserting a claim against Lydig's bond and retainage trust fund for Trig's unpaid employee benefit contributions. On July 22, 1998, IBEW filed an amended lien notice identical to the previous notice except for the amount of interest and attorney fees claimed.

Procedural History
IBEW filed its lien foreclosure action against Lydig on October 27, 1998, for the required but unpaid contributions to the employee benefit funds. On July 9, 1999, Lydig and Fidelity moved for summary judgment arguing IBEW had no standing to foreclose on the lien and that ERISA preempted the action in any event. On August 6, 1999, the trial court granted defendants' motion for summary judgment and dismissed IBEWs complaint on the grounds that the lien notices were deficient and IBEW lacked standing to sue on behalf of Trig employees. IBEW timely filed a notice of appeal to the Supreme Court and we accepted review of this direct appeal.

ISSUE[1]
The dispositive issue before the court is whether ERISA preempts IBEWs lien foreclosure *624 action under Puget Sound Elec. Workers Health & Welfare Trust Fund v. Merit Co., 123 Wash.2d 565, 870 P.2d 960 (1994), and if so, should we overrule Merit?

DISCUSSION

Standard of Review on Summary Judgment
It is well settled that we review the record on summary judgment de novo, engaging in the same inquiry as the trial court. Benjamin v. Wash. State Bar Ass'n, 138 Wash.2d 506, 515, 980 P.2d 742 (1999). Because our review is de novo, we are free to premise our holding affirming summary judgment on an issue not decided by the trial court. See Redding v. Va. Mason Med. Ctr., 75 Wash.App. 424, 426, 878 P.2d 483 (1994) (an appellate court may affirm a trial court's disposition of a summary judgment motion on any basis supported by the record); see also LaMon v. Butler, 112 Wash.2d 193, 200-01, 770 P.2d 1027 (1989). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993); CR 56(c).
There are no disputed material facts in this case. Rather we must determine a pure question of law: whether ERISA preempts IBEWs lien foreclosure action, which question turns on the continued validity of Merit. As counsel for Appellant conceded at oral argument, we must overrule Merit for IBEW to prevail.

The Continuing Validity of Merit
In a factually similar matter, this court six years ago unanimously held Washington's public works lien statutes, RCW 39.08 and RCW 60.28, which provide a mechanism for collection of a defaulting subcontractor's obligations from the general contractor, are preempted by ERISA. Merit, 123 Wash.2d 565, 870 P.2d 960.
RCW 39.08 requires the execution and delivery of a performance bond with respect to public works construction projects:
Whenever any ... body acting for the state or any county or municipality or any public body shall contract with any person or corporation to do any work for the ... municipality, or other public body, city, town, or district, such ... body shall require the person or persons with whom such contract is made to make, execute, and deliver to such . . body a good and sufficient bond, with a surety company as surety, conditioned that such person or persons shall faithfully perform all the provisions of such contract and pay all laborers, mechanics, and subcontractors and materialmen, and all persons who supply such person or persons, or subcontractors, with provisions and supplies for the carrying on of such work, which bond in cases of cities and towns shall be filed with the clerk or comptroller thereof, and any person or persons performing such services or furnishing material to any subcontractor shall have the same right under the provisions of such bond as if such work, services or material was furnished to the original contractor....
RCW 39.08.010. Relating thereto, RCW 60.28 requires the public body reserve a retainage fund from the money otherwise due the general contractor:
Contracts for public improvements or work, other than for professional services, by the state, or any county, city, town, district, board, or other public body, herein referred to as "public body," shall provide, and there shall be reserved by the public body from the moneys earned by the contractor on estimates during the progress of the improvement or work, a sum not to exceed five percent, said sum to be retained by the state, county, city, town, district, board, or other public body, as a trust fund for the protection and payment of any person or persons, mechanic, subcontractor or materialman who shall perform any labor upon such contract or the doing of said work, and all persons who *625 shall supply such person or persons or subcontractors with provisions and supplies for the carrying on of such work.... Every person performing labor or furnishing supplies toward the completion of said improvement or work shall have a lien upon said moneys so reserved:....
RCW 60.28.010(1).
Section 514(a) of ERISA states with respect to state laws:
Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
29 U.S.C. § 1144(a)(1994). Furthermore, "[t]he term `State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).
In Merit, a group of benefit trust funds sued, as does IBEW herein, under RCW 39.08 and RCW 60.28 to foreclose on a lien against a general contractor's bond for unpaid benefit plan contributions owed to employees by an insolvent subcontractor. Merit, 123 Wash.2d at 567-68, 870 P.2d 960. We held the lien foreclosure actions were preempted by ERISA. Id. at 573, 870 P.2d 960.
To determine whether the public works lien statutes "relate to" ERISA for the purposes of 29 U.S.C. § 1144(a), we looked to the test of Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Under Shaw, a statute may "relate to" ERISA "if it has a connection with or reference to such a plan." Shaw, 463 U.S. at 97, 103 S.Ct. 2890.
We believed the Washington public works lien statutes "connect with" and therefore "relate to" ERISA because they
create an entirely separate cause of action against the general contractors who otherwise have no contractual obligation to the plans. Furthermore, they provide a mechanism for funding employee benefit plans not available under the provisions of ERISA.
Merit, 123 Wash.2d at 572, 870 P.2d 960. Therefore the "enforcement and collection mechanisms [of the lien statutes] must yield to the extent they supplement those provided by ERISA." Id. at 573, 870 P.2d 960.
The civil enforcement mechanisms of ERISA are set forth at 29 U.S.C. § 1132 (1994) and specifically empower a participant, beneficiary, or fiduciary of a benefit plan to bring a civil action to enforce the terms of the plan. 29 U.S.C. § 1132(a)(3)(B)(ii) (1994). Furthermore 29 U.S.C. § 1145 governs delinquent contributions by employers to employee benefit plans as set forth in collective bargaining agreements. In a nonpreempted enforcement action, then, a party would use 29 U.S.C. § 1132(a) to enforce 29 U.S.C. § 1145 against the delinquent employer.
As we understood in Merit, to the extent the public works lien statutes provide an enforcement mechanism by imposing liabilities on general contractors' bonds and retainage funds for the delinquent benefit plan payments of a subcontractor, they provide alternative enforcement mechanisms to those provided by Congress when it enacted ERISA. The state statutes, then, undeniably "relate to" and "connect with" ERISA for the purposes of ERISA's preemption provision. 29 U.S.C. § 1144(a) (1994).
Under the holding of Merit, then, IBEWs action to enforce and collect on its lien against Lydig and Fidelity for Trig's delinquent payments into the employee benefit funds is preempted by ERISA. As noted above, IBEWs counsel conceded as much at oral argument. The question is, then, have subsequent developments in the law occurred which undermine our holding in Merit? IBEW argues both the United States Supreme Court and the Washington Supreme Court have departed from the strict rule of Merit that alternate enforcement mechanisms are preempted. Lydig and Fidelity argue Merit remains good law.
Not long after Merit, the United States Supreme Court in a series of cases attempted to develop a more helpful framework than Shaw's "refer to or connect with" test. *626 IBEW cites N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) for the proposition that the Supreme Court jettisoned a broad interpretation of ERISA preemption. Indeed, the Supreme Court later harkened back to Travelers for the proposition Congress in enacting ERISA's preemption clause did not intend to supplant existing state law. De Buono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (citing Travelers Ins. Co., 514 U.S. at 654-55), 115 S.Ct. 1671. IBEW argues that after Travelers, overruling Merit would simply restore the status quo ante with respect to the public works lien statutes and employee benefit plans.
Last fall, in In re Estate of Egelhoff 139 Wash.2d 557, 989 P.2d 80 (1999), cert. granted, ___ U.S. ___, 120 S.Ct. 2687, 147 L.Ed.2d 960 (2000), we took up the issue of whether ERISA preempted a Washington statute (RCW 11.07.010) giving children of decedents rights to the proceeds of employment-based life insurance plans. After a detailed analysis of the federal case law prior to and since Travelers we concluded, "The effect of Travelers and its progeny favors a retreat from the expansive preemption doctrine this court has previously followed to ensure ERISA's objective of protecting workers and Washington's sovereign interest in exercising its traditional police powers in the area of domestic relations and family law." Egelhoff, 139 Wash.2d at 570-71, 989 P.2d 80. This language ("... the expansive preemption doctrine this Court has previously followed....") bears on the validity of Merit by implication.
However IBEW places a great deal of emphasis on this kind of retreat language without analyzing the salient features of this case vis-a-vis Travelers, Egelhoff, and the cases from other jurisdictions which arguably retreat from a broad reading of ERISA's preemption language.
Travelers itself expressly contemplates ERISA preemption in a case such as this where a state statute provides an enforcement mechanism for funding an ERISA plan supplemental to the provisions of ERISA itself. In Travelers, the Supreme Court expressly noted "state laws providing alternative enforcement mechanisms also relate to ERISA plans, triggering pre-emption." Travelers Ins. Co., 514 U.S. at 658, 115 S.Ct. 1671 (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478,112 L.Ed.2d 474 (1990). Travelers Ins. Co., the case on which IBEW would have us overrule Merit, actually reaffirms the appropriateness of ERISA preemption in this kind of case.
Furthermore, Egelhoff is distinguishable from this case because here our task, as in Merit, involves delving into the relationship between Washington's public works lien statutes and ERISA, not the statute dealing with the distribution of nonprobate assets upon dissolution of marriage.
Even Egelhoff noted the distinction between it and those cases where "a state law which directly or indirectly invades the core functions of ERISA regulation must give way to the comprehensive federal scheme favored by Congress under the four-factor approach of the Court of Appeals for the Ninth Circuit." Egelhoff, 139 Wash.2d at 575 n. 93, 989 P.2d 80 (referencing identification of "four factors to determine whether a state law has a `connection with' an ERISA benefit plan....") (citing Aloha Airlines, Inc. v. Ahue, 12 F.3d 1498, 1504 (9th Cir.1993)).
After an analysis of the same "connection with" case the Ninth Circuit followed in Aloha Airlines, we decided in Merit that RCW 39.08 and RCW 60.28 manifest a substantive invasion into the field ERISA occupies by creating a separate cause of action against general contractors otherwise without liability to the employees of a subcontractor under the benefit plans and by providing a non-ERISA enforcement mechanism for funding the plans. Merit, 123 Wash.2d at 572, 870 P.2d 960. Nothing in substantive ERISA law has changed in the intervening years between Merit and this case that alters our conclusion. As noted above, the public works lien statutes "directly or indirectly invade[] the core functions of ERISA regulation" by providing a civil enforcement mechanism beyond what Congress specified in ERISA. See generally 29 U.S.C. § 1132(a)(3).
*627 Post-Travelers ERISA preemption decisions in other jurisdictions upon which IBEW relies are equally unpersuasive.
Several cases upon which IBEW relies involve general contractors liable on their bonds as employers. See Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561 (2d Cir.1995) (ERISA did not preempt a surety bond claim against an employer's bond to enforce the terms of a collective bargaining agreement when employer was delinquent on benefit payments). However the Second Circuit noted, "Pre-emption may be proper, for example, when state laws `mandate[] employee benefit structures or their administration' or `provid[e] alternative enforcement mechanisms' to § 502(a)." Greenblatt, 68 F.3d at 574 (alteration in original) (emphasis added) (quoting Travelers Ins. Co., 514 U.S. at 658, 115 S.Ct. 1671). See also Bd. of Trustees of Operating Eng'rs Local 825 Fund Serv. Facilities v. L.B.S. Constr. Co., 148 N.J. 561, 691 A.2d 339 (1997) (ERISA did not preempt foreclosure action against a general contractor's bond for the general contractor's delinquent payments to a fringe benefit plan); Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671 (9th Cir.1998) (same). These cases are distinguishable because the bond foreclosure actions were against the delinquent employers themselves and did not attempt to shift liability to fund an ERISA plan to a third party. There is a significant difference between plaintiffs enforcing their rights against their employer's bond as opposed to applying a state lien law to recover benefit contributions from a third party to the contract rather than enforce rights under a contract.
Notably, the Ninth Circuit in JWJ distinguished itself from a case like ours:
The statutes involved in both Marjo and Tri Capital provided remedies against third parties who never directly agreed to make contributions to ERISA trust funds when the employer failed to do so. By making additional parties liable to plan employees, these state statutes expand remedies by offering additional substantive mechanisms beyond what was contemplated by ERISA to solve the problem for which ERISA was created. In contrast, as JWJ's surety, Continental's contractual agreement to issue payment bonds transfers the obligation from the employer to its underwriter, for the protection of employees, and does not expand the remedies provided or contemplated by ERISA. This contractual relationship merely substitutes obligors.
JWJ Contracting Co., 135 F.3d at 679. Yet, as we succinctly described in Merit:
By imposing liability upon general contractors who have not agreed to make contributions to ERISA funds, Washington's public works lien statutes regulate how ERISA plans are funded. Consequently, they relate to ERISA benefit plans and the provisions of ERISA that address the nonpayment of contributions by employers to employee benefit plans.
Merit, 123 Wash.2d at 572, 870 P.2d 960.
Some recent United States Supreme Court cases cited by IBEW, and upon which we relied in Egelhoff 139 Wash.2d at 569-70, 989 P.2d 80, are simply inapposite. See, e.g., De Buono, 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (ERISA does not preempt a New York state gross receipts tax on hospitals); Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (ERISA does not preempt a California statute prohibiting a contractor on a public works project from paying an apprentice wage to an apprentice trained in an unapproved apprenticeship program). These cases differ from the instant case because, insofar as a lien foreclosure action under our public works lien statutes permits an alternative funding mechanism for the ERISA plans, such interferes with their administration well beyond the disparate fact patterns before the Supreme Court in De Buono and Dillingham.
In sum, the post-Merit and post-Travelers authority IBEW cites simply do not take this case outside of the preemptive scope of ERISA as recognized explicitly even in Travelers itself.

Stare Decisis
Stare decisis "`requires a clear showing that an established rule is incorrect and *628 harmful before it is abandoned.'" Waremart, Inc. v. Progressive Campaigns, Inc., 139 Wash.2d 623, 634, 989 P.2d 524 (1999) (quoting In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970). By failing to demonstrate a change in ERISA's preemptive force over state statutes providing an alternative enforcement mechanism to 29 U.S.C. § 1132(a), IBEW has not met this substantial burden. Merit remains good law.

CONCLUSION
Accordingly we decline IBEW's invitation to overrule Merit. We hold ERISA preempts the union's lien foreclosure action against Lydig and Fidelity to enforce Trig's duty under federal law to make payments to its unionized employee's ERISA-governed benefit plans. We affirm the trial court's summary judgment order and dismiss the case. Respondents shall recover their costs on appeal.
GUY, C.J., MADSEN, ALEXANDER, and BRIDGE, JJ., concur.
JOHNSON, J. (dissenting).
The majority relies upon a preemption analysis the United States Supreme Court has abandoned. See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Applying the wrong analytical approach, the majority erroneously concludes that a case decided prior to Travelers is determinative. See majority at 625 (citing Puget Sound Elec. Workers Health & Welfare Trust Fund v. Merit Co., 123 Wash.2d 565, 870 P.2d 960 (1994)). Moreover, in an attempt to strengthen its result, the majority relies upon cases that do not support its conclusion. A careful analysis of case law following Travelers reveals, however, that the right of the International Brotherhood of Electrical Workers (IBEW) to collect compensation owed to its members under the public works lien laws is only remotely connected to ERISA. Employee Retirement Income Security Act of 1974, Pub.L. No. 93-06, 88 Stat. 829 (codified as amended at 29 U.S.C. §§ 1001-1461) (ERISA). The claim in this case is not preempted.
Under 29 U.S.C. § 1144, all state laws are preempted to the extent they "relate to" any ERISA benefit plan. Prior to Travelers, the United States Supreme Court interpreted ERISA's preemption clause expansively. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The pre-Travelers approach determined that a state law related to an employee benefit plan if it had a connection with or made reference to such a plan. Shaw, 463 U.S. at 97, 103 S.Ct. 2890. Relying upon an expansive and literal interpretation, the Court found that state laws having even remote effects on ERISA plans related to them and were preempted. Shaw, 463 U.S. at 97, 103 S.Ct. 2890; see also In re Estate of Egelhoff, 139 Wash.2d 557, 567 nn. 43-45, 989 P.2d 80 (1999) (citing cases decided under a broad interpretation), cert. granted, ___ U.S. ___, 120 S.Ct. 2687, 147 L.Ed.2d 960 (2000). Under the supremacy clause, we were required to apply the Court's analysis to determine preemption.
The United States Supreme Court has since retreated from and abandoned such an expansive reading of ERISA's text. Attempting to limit the seemingly endless reach the broad interpretation of "relates to" could yield, the Travelers Court determined that state laws with only a "`tenuous, remote, or peripheral' connection with covered plans" do not merit preemption. Travelers, 514 U.S. at 661, 115 S.Ct. 1671 (quoting District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992)). The Court noted that state courts should now look to the "objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." Travelers, 514 U.S. at 656, 115 S.Ct. 1671. Looking to these objectives and applying them in this case, the inescapable conclusion is that Congress never intended ERISA to serve as a shield for an employer to raise in order to prevent its employees from collecting benefits owed them by that employer.
A primary concern of Congress when enacting ERISA was the "`mismanagement of *629 funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds.'" Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., Inc., 519 U.S. 316, 326-27, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (quoting Massachusetts v. Morash, 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989)). To remedy this mismanagement, Congress enacted comprehensive regulations that permitted the nationally uniform administration of employee benefit plans. Travelers, 514 U.S. at 657, 115 S.Ct. 1671. It was not, however, Congress' intention to create a law with such broad preemption powers so as to displace the traditional presumption against federal preemption of the state law. Travelers, 514 U.S. at 655, 115 S.Ct. 1671. Under Travelers, when analyzing the connection between state law and ERISA regulations, courts must now apply the more common approach to preemption, starting with the presumption that Congress does not intend to supplant state law. Travelers, 514 U.S. at 654, 115 S.Ct. 1671. This significantly narrows the scope of state law that is preempted.
Both the Ninth Circuit Court of Appeals and this court have recognized this new approach and have adopted the Travelers analysis. Egelhoff, 139 Wash.2d at 579, 989 P.2d 80 (ERISA does not preempt Washington's dissolution laws when determining life insurance and pension plan beneficiaries); see Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671 (9th Cir.1998). In Egelhoff, we stated, "[t]he effect of Travelers and cases following justify retreat from the expansive preemption doctrine our court has previously followed to ensure ERISA's objective of protecting workers...." Egelhoff, 139 Wash.2d at 580, 989 P.2d 80. In the present case, however, the majority minimizes the importance of Egelhoff.
Egelhoff is distinguishable from this case because here our task, as in [Puget Sound Electrical Workers], involves delving into the relationship between Washington's public works lien statutes and ERISA, not the statute dealing with the distribution of nonprobate assets upon dissolution of marriage.
Majority at 626. The majority superficially contrasts Egelhoff with Puget Sound Electrical Workers, based solely on the types of laws at issue. By doing so, the majority concludes Puget Sound Electrical Workers is determinative and Egelhoff does not have any bearing on this case. See majority at 626. I disagree.
A significant difference between Puget Sound Electrical Workers and Egelhoff exists that goes beyond the types of laws at issue in each case. In each of those cases, a very different preemption analysis was applied, which led to the different results. In Puget Sound Electrical Workers, we applied a broad, expansive interpretation of ERISA's § 514(a), which we were required to do under Shaw. Puget Sound Elec. Workers, 123 Wash.2d at 568-69, 573, 870 P.2d 960; see Shaw, 463 U.S. at 95-98, 103 S.Ct. 2890. In Egelhoff, we applied the narrower Travelers approach. By disregarding this shift in ERISA preemption, the majority avoids any meaningful application of the post-Travelers doctrine and reaches a conclusion inconsistent with current law.
The United States Supreme Court has cautioned against such an anachronistic approach. In reversing a decision of the Second Circuit Court of Appeals, the Court noted that the lower court "fail[ed] to give proper weight to Travelers' rejection of a strictly literal reading of § 514(a)." De Buono v. NYSA-ILA Med. & Clinical Servs. Fund 520 U.S. 806, 812-13, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (state tax on gross receipts of health care facilities was not preempted by ERISA). The majority makes the same mistake here.
The majority also discounts the Ninth Circuit's application of Travelers. See JWJ Contracting Co., 135 F.3d 671. The majority cites to JWJ Contracting for the proposition that state laws providing remedies against third parties are preempted because those laws offer additional enforcement mechanisms. Majority at 627. That was the conclusion the Ninth Circuit reached in two pre-Travelers cases. See Trs. of Elec. Workers Health & Welfare Trust v. Marjo Corp., 988 F.2d 865 (9th Cir.1992); Carpenters Health & Welfare Trust Fund v. Tri Capital Corp., *630 25 F.3d 849 (9th Cir.1994). While those cases were correctly decided under Shaw, they are no longer good law.
The majority seriously misrepresents the Ninth Circuit's decision in JWJ Contracting. There, the defendants argued that the Ninth Circuit's pre-Travelers rulings were still good law and should be followed. While the Ninth Circuit agreed with the defendants' assertion that the statutes in Marjo and Tri Capital were preempted because the statutes in both provided remedies against third parties, it in no way affirmed the continuing control of those cases. JWJ Contracting Co., 135 F.3d at 679. In fact, the court implied just the opposite, stating the Marjo and Tri Capital decisions relied on "expansive language from the Supreme Court demonstrating an understanding of ERISA pre-emption that has since been tailored to better fit Congress's policy intentions." JWJ Contracting Co., 135 F.3d at 679.
The majority's misguided assessment of JWJ Contracting enables it once again to remain wholly unaccountable to the fundamental shift in preemption analysis. Avoiding this, the majority relies heavily upon a case decided under the pre-Travelers doctrine to determine the outcome in this case, thus leading it further astray.
The continuing viability of Puget Sound Electrical Workers serves as the linchpin of the majority's ruling. The majority cites this case for the proposition that the public works lien statutes at issue here provide an alternative funding mechanism and, therefore, are preempted under ERISA. Majority at 625. The majority concludes that Puget Sound Electrical Workers' continued authority is evidenced by the fact the Travelers Court reaffirmed its previous holding in Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). In Ingersoll-Rand, the United States Supreme Court held that a Texas state law providing an alternative enforcement mechanism was preempted. Ingersollr-Rand Co., 498 U.S. at 139-40, 111 S.Ct. 478. However, the Texas law involved a direct connection with ERISA rather than a remote one, as is the case here. Thus, the majority has misapplied Travelers.
At issue in Ingersoll-Rand was whether a common law cause of action in Texas for wrongful termination due to an employer's desire to avoid contributing to an employee's pension fund "related to" employee benefit plans. Ingersoll-Rand Co., 498 U.S. at 137-39. The Supreme Court ruled that it did. The decision turned on the fact that the existence of an ERISA plan was a critical factor in establishing liability. Ingersoll-Rand Co., 498 U.S. at 139-10, 111 S.Ct. 478. The majority fails to recognize that the Ingersoll-Rand decision was premised on the fact that the law was "`specifically designed to affect employee benefit plans....'" Ingersoll-Rand Co., 498 U.S. at 140, 111 S.Ct. 478 (quoting Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 829, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988)). The connection was direct and substantial. However, that was not the case in Puget Sound Electrical Workers, and is not the case here.
The public works hen laws at issue in Puget Sound Electrical Workers and in this case are laws of general applicability that are used by a class of creditors regardless of whether there is an ERISA plan. Thus, Travelers' reaffirmation of Ingersollr-Rand's holding has no bearing on whether Puget Sound Electrical Workers is good law.
Ingersollr-Rand expressly distinguished the Texas state cause of action from a "generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." Ingersoll-Rand Co., 498 U.S. at 139, 111 S.Ct. 478. The Supreme Court pointed to its previous decision in Mackey (holding § 514(a) did not preempt a state's general garnishment procedures) to demonstrate that, even under its broadest reading, § 514 did not preempt a state's generally applicable statute that had only a tenuous connection with covered plans. Ingersoll-Rand Co., 498 U.S. at 139-40, 111 S.Ct. 478. This is the exact situation we are presented with here. The public works lien laws are generally applicable statutes available to an entire class of creditors, regardless of whether an ERISA plan exists.
Other courts reviewing the use of lien laws to collect delinquent ERISA fund contributions from third parties have also drawn an *631 analogy between the issues in those cases and the Mackey decision:
"The United States Supreme Court has held that Congress did not intend to prohibit the use of state law garnishment procedures to execute judgments against ERISA benefit plans. Mackey, 486 U.S. at 831-32, 108 S.Ct. 2182. If plans may use state law to collect on a judgment against a plan, certainly ERISA does not preempt the plan's ability to use those procedures to collect a judgment on behalf of the plan."
Haw. Laborers' Trust Funds v. Maui Prince Hotel, 81 Hawai`i 487, 497, 918 P.2d 1143 (1996) (quoting Plumber's Local 458 Holiday Vacation Fund v. Howard Immel, Inc., 151 Wis.2d 233, 238-39, 445 N.W.2d 43 (Ct.App. 1989)).
Similarly, after thoroughly reviewing the congressional intent behind ERISA, the Hawaii Supreme Court held that disallowing the use of lien laws to collect delinquent ERISA fund contributions was inconsistent with ERISA's objective of protecting workers. Haw. Laborers' Trust Funds, 81 Hawai`i at 497-500, 918 P.2d 1143. Ruling any other way, the Hawaii Supreme Court reasoned, would "ignore federal policy and fly in the face of logic." Haw. Laborers' Trust Funds, 81 Hawai`i at 500, 918 P.2d 1143. I agree.
In this case, the lien laws are laws of general applicability. They have only tenuous connections with ERISA plans. Under Travelers, such a connection is not enough to overcome the presumption that Congress does not intend to supplant state law. Therefore, this court's decision in Puget Sound Electrical Workers is no longer instructive and, to the extent it is no longer good law, is superseded by Egelhoff and Travelers.
The IBEW is attempting to collect funds owed to the employees. The public works lien statutes at issue here are generally applicable. They make no reference to an ERISA plan. The statute creates a procedural mechanism which is available to a class of creditors. Such laws often have only a "`tenuous, remote, or peripheral' connection with covered plans." Travelers, 514 U.S. at 661, 115 S.Ct. 1671 (quoting Greater Wash. Bd. of Trade, 506 U.S. at 130 n. 1, 113 S.Ct. 580). It is Trig's burden to prove Congress intended to supplant Washington's lien laws. See De Buono, 520 U.S. at 814, 117 S.Ct. 1747 (party asserting ERISA preemption bears a considerable burden of proving that Congress intended to preempt state law). Reliance upon outdated precedence does not suffice to meet this burden.
Using "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," Travelers, 514 U.S. at 656, 115 S.Ct. 1671 Congress did not intend to foreclose to employees established procedures for collecting benefits owed them. I would hold that the employees' right to collect the benefits owed them has no direct connection to ERISA and preemption does not apply.
SMITH, TALMADGE, and IRELAND, JJ., concur.
NOTES
[1] IBEW assigns error generally to the trial court's dismissal of its case in summary judgment. While the parties brief the specific grounds for which the trial court granted summary judgment, viz., that IBEW lacked standing to bring the foreclosure action under RCW 39.08 and RCW 60.28, see Clerk's Papers (CP) at 215-16 (Memorandum Decision), the standing issue is not essential to our holding. We therefore pass to the ERISA preemption question.